OPINION OF THE COURT
Anthony J. Cerrato, J.
The issue raised on this motion to confirm a referee’s report *926 is important and appears to be one of first impression. It involves fairly recent Real Property Law legislation relative to condominiums and in particular involves the question of whether the statutory lien for condominium common charges (in favor of the condominium’s board of managers) is entitled to priority over a previously recorded second mortgage.
THE FACTS
In June of 1973, Stanley and Marcia Schneider, the then owners of a mortgaged condominium situate in Stonegate Homes in the Village of Suffern, Rockland County, New York, gave a second mortgage affecting said premises to the Bergen State Bank of New Jersey. The face amount of that second mortgage was $9,699.50 and said mortgage was recorded in the office of the Clerk of Rockland County on June 14, 1973.
On May 15, 1974 the board of managers of the condominium complex of Stonegate Homes at Suffern filed a lien in the amount of $663.14 in the office of the Clerk of Rockland County representing principal and interest then due for condominium’s common charges.
On January 27, 1976 the subject premises was sold in foreclosure and the referee’s deed conveying the premises was delivered on March 26, 1976. As a result of the sale and payoff of the purchase money mortgage, there was a surplus of $4,287.87 which surplus was paid to the County Treasurer of Rockland to the credit of this action.
On April 26, 1977 the referee for sale, who was also appointed the referee to report in surplus money proceedings, held a hearing at which the board of managers for the condominium at Stonegate Homes submitted a certified copy of a lien for common charges totaling $2,662.72 plus interest (inclusive of the previously referred to amount of $663.14) was filed in the office of the Clerk of Rockland County on May 4, 1977 nunc pro tunc as of March 1, 1976.
In view of the fact that there was only $4,287.87 remaining after satisfaction of the first mortgage, the question of priority between the lien for common charges ($2,662.72) and the second mortgage ($7,739.89) is clearly evident.
THE CONTENTIONS
Stonegate Homes relies on section 339-z of the Real Property Law which provides in part, as follows: "The board *927 of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit, school district, special district, county or other taxing unit, and (ii) all sums unpaid on a first mortgage of record or on a subordinate mortgage of record held by the New York job development authority. Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee”. (Emphasis supplied.) It is the position of Stonegate that its lien for condominium common charges is, by virtue of the foregoing section, entitled to priority over the Bergen State Bank’s recorded second mortgage.
The Bergen State Bank relies on section 339-aa of the Real Property Law which provides, in part: "The lien provided for in the immediately preceding section shall be effective from and after the filing in the office of the recording officer in which the declaration is filed a verified notice of lien stating the name (if any) and address of the property, the liber and page of record of the declaration, the name of the record owner of the unit, the unit designation, the amount and purpose for which due, and the date when due; and shall continue in effect until all sums secured thereby, with the interest thereon, shall have been fully paid or until expiration six years from the date of filing, whichever occurs sooner.” (Emphasis supplied.) It is their contention that the lien of the condominium was effective only after the notice of lien was filed by the condominium. Since the notice was not filed by the condominium’s managers until a year after the recording of the second mortgage, Bergen State Bank’s second mortgage was entitled to priority. In any event, Bergen State argues that if the lien for common charges is entitled to priority, then the priority should be limited to the amount reflected in the filing of May 15, 1974 and not in the additional amount claimed on May 4, 1977.
RESOLUTION
To be sure the language used by the draftsmen of sections 339-z and 339-aa lacks a certain precision. What is clear, however, is the fact a lien for common charges is provided for by section 339-z and that such lien, when effectuated, gains a certain priority. As noted, that section provides that the *928 "board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof * * * prior to all other liens” other than that of a first mortgagee or a municipality for realty taxes. (Emphasis supplied.)
The ensuing section 339-aa of the Real Property Law also speaks of the "lien provided for in the immediately preceding section” but states that such lien "shall be effective from and after the filing [of such lien] in the office of the recording officer [County Clerk]”. Thus, before a lien is filed it is without force or effect and this is only fair as until it is filed no one (including the referee for sale, the second mortgagee[1] or a possible grantee[2]) has been put on notice that the unit owner is other than current in his share of the condominium’s common charges. However, once notice of the lien is filed, by such act the lien for common charges obtains a priority over previously filed liens and mortgages, except as has been noted. Any other interpretation of sections 339-z and 339-aa of the Real Property Law would be a perversion of the apparent legislative intent to afford a priority to a lien for common charges over a second mortgage even where such lien was filed after the second mortgage. If it were the intent of the Legislature to provide priority to a lien for common charges over second mortgage only where that lien was filed prior in time to said second mortgage, section 339-z would be largely meaningless as the concept of prior in time, prior in right is well established by article 9 of the Real Property Law containing those statutes commonly called the "recording acts.”
The next issue which rears itself concerns the extent of the lien for common charges which is to have priority over a previously filed second mortgage. In short, should the priority for the lien envisioned by section 339-z be limited only to the *929 $663.14 of accrued common charges of record at the time of the foreclosure, or should priority be for the total accrued common charges due at the time of the sale or conveyance of the underlying property? Again it is necessary to return to the language of the opening sentence of section 339-z which provides that the lien the board of managers shall have on each condominium unit is for "the unpaid common charges.” In my opinion, in the absence of any limiting language, by these words the Legislature meant all unpaid common charges which have accrued. No other interpretation would be consistent with the apparent overriding concern in the minds of the Legislature in enacting sections 339-z and 339-aa of the Real Property Law — that of ensuring the continued viability of the entire condominium project and protecting those who have invested substantial sums of their life savings from unit owners who have failed to pay their common charges. To read into this statute, as has been suggested, a requirement that the board of managers update its liens monthly[3] in order to protect additional amounts accruing each month would be an interpretation which would be costly, burdensome and contrary to the afore-mentioned legislative objective. It should also be noted that at one point later on in section 339-z it is provided: "Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee.”[4] Again there is no limitation on the amount of the unpaid common charges which would be paid out of the sale proceeds except for the modifying word "such” and that word refers to the article "the” used in the opening sentence.
Finally, on the point, section 339-aa provides that the amount of the lien is to be noted on the verified notice of lien and further states that such lien "shall continue in effect until all sums secured thereby, with interest thereon, shall have been fully paid”. (Emphasis supplied.) Such quoted and underscored language, while creating some possible ambiguity, does not, in my opinion, limit the lien defined in section 339-z of the Real Property Law to the amount specified in the verified *930 notice of lien. Indeed, the concluding sentence in section 339-aa makes that clear when it provides: "Except as herein specifically provided, nothing contained herein shall affect or impair or release the unit from the lien for such common charges or impair or diminish the rights of the manager or the board of managers on behalf of the unit owners under this section and section three hundred thirty-nine-z.” (Emphasis supplied.)
The "hue and cry” of unconstitutionality raised by the Bergen State Bank, the holder of the second mortgage which has been severely undercut by the lien for common charges is, in my opinion, without merit. Any rights the Bergen State Bank has in the subject condominium unit and the proceeds on the sales of such property are derived from the New York recording act, and it is certainly within the power of the Legislature to make reasonable exceptions to its own laws. Sections 339-z and 339-aa of the Real Property Law are on their face reasonable and necessary to protect a legitimate interest of the Legislature. Both sections were part of the laws of the State of New York at the time Bergen State Bank agreed to take a second mortgage on the subject property and at that time they should have been aware of the fact that such a second mortgage was subject to having its priority displaced by a lien for common charges.[5]
Accordingly, for the reasons noted, the referee’s report is confirmed and defendant Stonegate’s motion is granted in all respects.

. The second mortgagee may wish to protect its position at a foreclosure sale by, for example, bidding in.

. Since section 339-z of the Real Property Law provided that "Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee”, once any prospective grantee is put on notice of some outstanding charges, it is incumbent upon a prospective buyer to take steps to ascertain his possible exposure for unpaid charges, or otherwise protect himself. Section 339-z entitles any "grantor or grantee of a unit * * * to a statement from the manager or board of managers, setting forth the amount of the unpaid common charges accrued against the unit, and neither such grantor nor grantee shall be liable for, nor shall the unit conveyed be subject to a lien for, any unpaid common charges against such unit accrued prior to such conveyance in excess of the amount therein set forth.”

. It would clearly be an impossible task for the condominium managers to know in advance the total amount a particular unit owner will default on so as to be able to prepare a lien securing all the money which will be owed to it.

. Although it would seem by this language that the unpaid charges lien has a priority over all other claims, to the proceeds realized on a sale, it should be noted that the opening sentence of section 339-z does subordinate the common charges lien to liens for taxes and a first mortgage of record. (See, 1 Rohan, Condominium Law & Practice, § 6.04[2].)

. It should be noted that not only does Real Property Law provide for the priority of the lien for common charges but the by-laws of the subject condominium also refer to this statutory priority.