In re Charles D. EATMAN, Debtor.

Bankruptcy No. 95 B 41566 (SMB).

United States Bankruptcy Court,
S.D. New York.

May 26, 1995.

Winick & Rich, P.C. (Robert N. Michaelson, of counsel), New York City, for Residential Bd. of Managers of Columbia Condominium.

Law Office of Allen C. Rolle, P.C. (Allen C. Rolle, of counsel), Brooklyn, NY, for debtor.

## MEMORANDUM DECISION GRANTING RELIEF FROM THE STAY, CONVERTING THE CASE AND AWARDING SANCTIONS

STUART M. BERNSTEIN, Bankruptcy Judge.

Charles D. Eatman filed this chapter 13 petition on April 13, 1995. This constitutes the fifth aggregate filing by the debtor and his wife who jointly own a condominium apartment (the "Apartment") in New York, New York. In each instance, they filed their case on the figurative eve or literal day of the foreclosure sale of the Apartment.

The Board of Managers of the Columbia Condominium (the "Condominium") now moves for relief from the automatic stay, or in the alternative, to dismiss this case with prejudice. The Condominium also seeks sanctions against the debtor and his attorney, Allen C. Rolle, Esq. For the reasons that follow, the Court will convert the case to chapter 7, conditionally grant the motion for relief from the automatic stay and award sanctions against the debtor and his attorney.

### FACTS [1]

At all relevant times, the debtor and his wife jointly owned the Apartment which, according to the debtor's current schedules, has a fair market value of $250,000.00. Dime Savings Bank ("Dime") holds a first mortgage that totalled $109,564.65 as of December 23, 1994, and the mortgage appears to be current. The debtor's principal obligation arises from unpaid common charges that pertain to the Apartment and accrue at the present monthly rate of $643.71. The Eatmans have not paid any common charges since 1988, and possibly even before then. The Condominium contends that the unpaid common charges, interest, attorney's fees and costs total $196,932.74 as of April 10, 1995, and that the Apartment secures this entire amount.

This case, like the prior cases that the debtor or his wife filed, aims to stop the

---

1. The debtor never submitted any papers in response to the Condominium's motion, or challenged the facts presented in the Condominium's papers. The Court, therefore, accepts these facts as true for the purpose of this motion.

Condominium's foreclosure sale. By summons and complaint dated February 7, 1989, the Condominium commenced a suit in the state court against the Eatmans to foreclose a notice of lien for unpaid common charges that the Condominium had recorded against the Apartment on May 18, 1988. On October 8, 1992, the state court signed a judgment of foreclosure and sale, awarding judgment in the sum of $39,963.70, plus $400.00 in allowed costs, for a total judgment of $40,363.70. The principal represents unpaid common charges due through July, 1991. The judgment also awarded the additional common charges and interest accruing through the date of the sale.

The Condominium scheduled the foreclosure sale of the Apartment, for the first time, for December 15, 1992. However, that sale was automatically stayed when, on December 14, 1992, the debtor filed a chapter 13 petition in the Eastern District of New York. The bankruptcy court dismissed the debtor's first petition on or about April 30, 1993, and the Condominium rescheduled the sale for June 28, 1993.

On the new sale date, however, Mrs. Eatman filed a chapter 13 petition in the Southern District of New York. The bankruptcy court dismissed Mrs. Eatman's petition on April 4, 1994, and the Condominium rescheduled the sale of the Apartment, for the third time, for April 15, 1994.

On April 15, 1994—the sale date—Mrs. Eatman filed her second chapter 13 petition, this time in the Eastern District of New York. The bankruptcy court dismissed her second petition on November 17, 1994. The Condominium rescheduled the sale, for the fourth time, for January 23, 1995.

On January 20, 1995, three days before the scheduled sale, Mrs. Eatman filed her third petition. The Condominium successfully moved for an order modifying the automatic stay to permit the foreclosure sale to proceed. On March 27, 1995, however, before an order could be entered granting that relief, Judge Holland signed an order dismissing Mrs. Eatman's third petition for failure to make plan payments to the chapter 13 trustee. The Condominium then rescheduled the sale, for a fifth time, for April 13, 1995.

The debtor blocked the sale by filing the current petition on the same day as the scheduled sale. Within one week after this fifth filing, the Condominium made the motion now before the Court.

## DISCUSSION

### A. Relief from the Automatic Stay

The Condominium seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d), or alternatively, dismissal with prejudice under 11 U.S.C. § 1307(c). Under each alternative, the Condominium also seeks sanctions. The Court can grant relief from the automatic stay under section 362(d)(1) for cause or under section 362(d)(2) if the debtor lacks equity in the property and the property is not necessary for an effective reorganization. While section 362(g) allocates the burden of ultimate persuasion, under either ground, the movant must still make a *prima facie* showing that it is entitled to the relief that it seeks. *In re Elmira Litho, Inc.*, 174 B.R. 892, 900, 902 (Bankr.S.D.N.Y.1994).

The Condominium has failed to demonstrate a right to relief under section 362(d)(2) because it has not shown that the debtor lacks equity in the Apartment. The only evidence before the Court shows that the Apartment has a fair market value of $250,000.00, subject to a first mortgage in the approximate sum of $110,000.00. To establish the debtor's lack of equity, the Condominium had to show that it held a *secured* claim in excess of $140,000.00. Although it submitted evidence indicating that it held a claim in the sum of $196,932.74, it failed to show that the entire claim was secured under New York law.

New York grants a condominium a lien for unpaid common charges. *See* N.Y.Real Property Law § 339–z (McKinney's 1989). The latter section provides, in pertinent part, as follows:

The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit,

school district, special district, county or other taxing unit, and (ii) all sums unpaid on a first mortgage of record or on a subordinate mortgage of record held by the New York job development authority or held by the New York state urban development corporation. Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee. . . .

■ The lien is not self-executing; to become effective, the Condominium must file a notice of lien in the appropriate recording office. Section 339–aa of the Real Property Law provides, in pertinent part, as follows:

The lien provided for in the immediately preceding section shall be effective from and after the filing in the office of the recording officer in which the declaration is filed a verified notice of lien . . .; and shall continue in effect until all sums secured thereby, with the interest thereon, shall have been fully paid or until expiration six years from the date of filing, whichever occurs sooner. . . .

■ Once the condominium files a notice of lien, the lien extends to subsequently accruing, unpaid common charges and accrued interest due up to the time of the sale or conveyance. *Washington Federal Sav. & Loan Ass'n v. Schneider*, 95 Misc.2d 924, 929, 408 N.Y.S.2d 588, 590 (Sup.Ct.Rockland Co.1978); *see In re Raymond*, 129 B.R. 354, 362 (Bankr.S.D.N.Y.1991); *see also* W. Goldsmith, *Practice Commentaries* 553, 576; printed in Book 49, Real Property Law (McKinney's 1989). The condominium's lien is, however, subordinate to a recorded first mortgage. *Bankers Trust Co. v. Bd. of Managers of Park 900 Condominium*, 81 N.Y.2d 1033, 1036, 600 N.Y.S.2d 191, 193, 616 N.E.2d 848 (1993). Further, the lien does not, at least on its face, extend to attorney's fees, and the Declaration of Condominium, recorded pursuant to N.Y.Real Property Law § 339–s (McKinney Supp.1995), may specifically provide otherwise. *See, e.g., In re Mishkin*, 85 B.R. 18, 22 (Bankr.S.D.N.Y. 1988).

■ The Condominium duly filed its notice of lien on May 18, 1988, and on October 8, 1992, the state court entered its judgment of foreclosure and sale. The judgment, *inter alia*, awarded the Condominium the aggregate sum of $40,363.70. This covered all charges through July, 1991. As stated, the lien also extends to all unpaid common charges and accrued interest up to the sale or conveyance. The serial filings have prevented the sale of the Apartment, and consequently, the statutory lien secures all unpaid common charges and accrued interest due as of the petition date.

■ According to the Condominium's proof, the unpaid common charges accruing after July, 1991 total $28,545.88. In addition, the aggregate interest accrued on these unpaid common charges and the unsatisfied judgment equals $28,237.56. These two sums together with the unsatisfied judgment total $97,147.14, and this amount represents the extent of the Condominium's secured claim, at least for the purpose of this motion.

■ The balance of the claim consists primarily of late charges and attorneys fees, and also includes certain repair charges, referees' fees and advertising and publishing costs. The Condominium assumes, without explanation, that these are common charges within the meaning of section 339–z, and therefore, covered by its lien. The Court cannot conclude as a matter of law that the lien extends to these additional claims, and the Condominium's motion cannot, therefore, succeed under section 362(d)(2).

■ The Condominium has nevertheless demonstrated that it is entitled to relief from the automatic stay under section 362(d)(1). First, the debtor has not paid common charges at least since early 1988, and this implies that he will not pay common charges in the future. The debtor did not even propose to do so in response to this motion. Second, the Condominium holds collateral that is likely to decline in value over time. The debtor valued the Apartment at $300,000.00 in his December, 1992 petition, and now values the Apartment at $250,000.00. This represents a 16.67% decline in slightly more than two years.

■ Once the Condominium demonstrates that the Apartment is likely to de-

cline in value while the stay remains in effect, the burden shifts to the debtor to prove that the Condominium is adequately protected. *In re Elmira Litho,* 174 B.R. at 902. The debtor failed to produce any evidence or offer any payments in response to the motion. The Court concludes, therefore, that the Condominium is not adequately protected, and is entitled to relief from the automatic stay.

## B. The Debtor's Bad Faith

■■■ The Condominium's proof goes beyond lack of adequate protection. The bankruptcy court can grant relief from the automatic stay under section 362(d)(1) if the debtor files his petition in bad faith. *In re Sonnax Indus. Inc.,* 907 F.2d 1280, 1287 (2d Cir.1990); *Manhattan King David Restaurant, Inc. v. Levine,* 163 B.R. 36, 40 (S.D.N.Y.1993). In addition, although 11 U.S.C. § 1307(c) does not expressly equate bad faith with "cause,"[2] the bankruptcy court can also dismiss the petition or convert the case under section 1307(c) if the debtor files his petition in bad faith. *Eisen v. Curry (In re Eisen),* 14 F.3d 469, 470 (9th Cir.1994); *In re Gier,* 986 F.2d 1326, 1329 (10th Cir. 1993); *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992); *cf. In re Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 229 (2d Cir.1991) (observing that bankruptcy courts readily dismiss chapter 11 cases filed in bad faith). The same test for bad faith applies under both statutes. *In re Seversen,* 1995 WL 29634 at *3 and n. 4 (N.D.Ill. Jan. 24, 1995).

■■■ Bad faith has both an objective and subjective element; the proponent of bad faith must show "both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code." *In re Love,* 957 F.2d at 1357. The bankruptcy court must review the totality of the circumstances in reaching its decision. *In re Eisen,* 14 F.3d at 470 (quoting *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982)); *see In re Love,* 957 F.2d at 1357. Serial filings are evidence of bad faith, *Stathatos v. United States Trustee (In re Stathatos),* 163 B.R. 83, 88 (N.D.Tex.1993); *In re Jones,* 174 B.R. 8, 14 (Bankr.D.N.H.1994), as are petitions filed to forestall creditors, often replete with false and misleading information, that offer no legitimate prospect of reorganization. *See In re Eisen,* 14 F.3d at 470–71 (second petition filed after first petition dismissed for bad faith, and debtor misled creditors regarding assets); *In re Jones,* 174 B.R. at 14 (separate, successive cases filed by debtor and wife to invoke the automatic stay, the plan pays only the debtor's wife and rejects most other claims); *In re Dami,* 172 B.R. 6, 10 (Bankr.E.D.Pa.1994) (successive filings to frustrate creditor's collection efforts, and schedules are false and misleading); *In re Slater,* 49 B.R. 501, 503 (Bankr.D.Del.1985) (filing to forestall creditor's collection efforts, and no likelihood of confirmation at any point).

■■■ The Condominium's uncontroverted submission meets the burden of proving objective and subjective bad faith. The debtor filed this case for the purpose and with the effect of frustrating the Condominium's collection efforts, but without any realistic intention or ability to reorganize. The Condominium's papers imply, the Court infers, and the debtor, through his silence, concedes that the debtor and his wife have operated in tandem since December, 1992, filing bankruptcy petitions on the eve or actual day of foreclosure to prevent the Condominium from enforcing its lien. The state court entered its judgment on October 8, 1992, and the Condominium scheduled the first sale for December of that year. Thereafter, the debtor filed the first of the Eatman bankruptcies one day before the sale, the Eatmans filed three more cases on the same day as the rescheduled sale date, and Mrs. Eatman filed a fifth case three days before the sale date.

In light of the Eatmans' motives for filing their cases, it is difficult to see how the debtor's schedules overlook the Condominium's claim. According to Schedule D, the only claim secured by the Apartment belongs

---

**2.** By contrast, section 1325, which deals with confirmation, expressly requires the debtor to propose his plan in good faith. 11 U.S.C. § 1325(a)(3).

to Dime, and the omission of the Condominium's claim creates the illusion that the value of the debtor's net equity in the Apartment is $140,000.00.

The debtor and his counsel are hard-pressed to explain this omission, and they don't even try. They obviously knew about the Condominium's lien; the Statement of Financial Affairs acknowledges the pending foreclosure action, and the Condominium could not maintain it unless it had perfected its lien for unpaid common charges. Indeed, it has reduced that claim to judgment.

Further, the Condominium's secured claim did not escape the Eatman's attention in their earlier cases. The debtor scheduled a second Condominium claim in the sum of $70,600.00 in his December, 1992 petition, and Mrs. Eatman scheduled a secured Condominium claim in the sum of $122,000.00 in her January, 1995 petition. It is not likely that the debtor mistakenly thought he paid it.

The debtor's plan also disregards the Condominium's claim, and in doing so, the requirements for confirmation contained in 11 U.S.C. § 1325. The debtor does not propose to pay any secured debt under his plan. He characterizes all of the debt as unsecured, and proposes to pay $350.00 each month for 60 months, or a total of $21,000.00.[3] Based upon the income and expenses that the debtor lists, this sum represents the limit of what the debtor could pay.

 Under 11 U.S.C. § 1325(a)(5), however, the debtor's plan must pay the Condominium the present value of its secured claim, and the Condominium must retain its lien, unless the Condominium agrees otherwise or the debtor surrenders the Apartment. The Condominium holds a secured claim in the approximate amount of at least $100,000.00. To pay the Condominium the present value of that secured claim, the debtor would have to pay substantially more

than $100,000.00 over five years. The plan falls woefully short, and the debtor could not afford to make the payments even if he wanted to do so.[4] In addition, the plan fails to recognize any secured debt, and thus, does not provide that the Condominium will retain its lien. Consequently, the plan is unconfirmable as a matter of law, and this should have been as obvious to the debtor and his counsel as it was to the Condominium.

Finally, the petition and schedules are riddled with material misstatements, inconsistencies and omissions. Although the petition requires certain information regarding prior filings, the debtor fails to mention that he filed a case in December, 1992, and falsely states that he filed a petition in 1989. Besides omitting the Condominium debt, the schedules indicate that the debtor is the sole owner of the Apartment and the sole obligor on the first mortgage. By contrast, his 1992 filing stated that he and his wife owned the Apartment jointly. In her 1995 petition, Mrs. Eatman also stated that she and the debtor owned the Apartment jointly, and were jointly liable to the first mortgagee and the Condominium.

In conclusion, the Condominium has demonstrated that it is entitled to relief from the automatic stay, not merely because it lacks adequate protection, but also because the debtor filed his petition in bad faith. In addition, bad faith filings can lead to other consequences, providing grounds for dismissing the petition or converting the case to a chapter 7. With this in mind, the Court turns to the other relief that the Condominium has requested.

## C. Conversion of the Case

The Condominium has made an alternative request to dismiss the case with prejudice. It asks the Court to enjoin the debtor and his non-debtor wife from filing another case until the Condominium concludes the foreclosure

---

**3.** The debtor never explains the basis for this amount. He scheduled only $1,000.00 in unsecured debt.

**4.** The debtor does not list any current income for Mrs. Eatman in Schedule I, and states that the Eatmans' combined monthly income is $4,150.00. Hence, Mrs. Eatman lacks the ability

to contribute toward the debtor's plan even though it pays—or should pay—joint obligations. Three months earlier, Mrs. Eatman filed her own chapter 13. At that time, she represented that she earned monthly income of $3,583.33, and the Eatmans' monthly income totalled $7,840.25.

sale, or this Court grants leave to file another case after notice to the Eatmans' creditors. Although the Court can dismiss a bad faith filing, the Condominium's request presents significant legal hurdles.

■ First, the Court cannot prevent Mrs. Eatman from filing another petition. She is neither a debtor in this case nor a defendant in an adversary proceeding that seeks such injunctive relief. Second, the Court questions whether, in dismissing the case as a bad faith filing, it can prevent the debtor from filing another petition except as set forth in 11 U.S.C. §§ 109(g) [5] and 349(a).[6] *Compare In re Frieouf,* 938 F.2d 1099, 1103 & n. 4 (10th Cir.1991) (the bankruptcy court cannot, in dismissing a case, limit future access to the bankruptcy court, except as provided in 11 U.S.C. §§ 109(g) and 349(a)), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992) *and In re Cooper,* 139 B.R. 736, 739 (D.Colo.1992) (same) *with In re Stathatos,* 163 B.R. at 88 (where cause exists, the bankruptcy court has the inherent power to dismiss a case and limit future access to the bankruptcy court without regard to sections 109(g) and 349(a)), *In re Jolly,* 143 B.R. 383, 387 (E.D.Va.1992) (same) *and Lerch v. Federal Land Bank,* 94 B.R. 998, 1001 (N.D.Ill. 1989) (same).

■ The Court need not resolve this knotty issue now. Even if it could limit the debtor's ability to file another case, it would not do so. First, the injunction would not accomplish its purpose; Mrs. Eatman could still file another petition, and stay the next foreclosure sale. *See In re Jones,* 174 B.R. at 15. Second, conversion rather than dismissal serves the best interest of the creditors and the estate.

■ As a preliminary matter, the Condominium's alternative motion limited to dismissal also empowers the Court to convert the case in the interest of the creditors and the estate. *In re Elkin,* 5 B.R. 21, 23 (Bankr.S.D.Cal.1980); *cf. In re Walters,* 11 B.R. 567, 569 (Bankr.S.D.W.Va.1981) (where creditor moves only to convert a chapter 13 case, the bankruptcy court can instead dismiss the case if dismissal is in the best interest of the creditors and the estate). Under 11 U.S.C. § 1307(c), the same "cause" factors apply to conversion and dismissal, and under its express terms, the bankruptcy court can convert *or* dismiss if cause exists. Consequently, the motion to dismiss puts the debtor on notice that the proof common to both may, depending on the circumstances of the case, instead warrant conversion. *See In re Elkin,* 5 B.R. at 23. Further, while dismissal and relief from the automatic stay are alternative remedies—dismissal moots the motion for relief from the automatic stay—conversion and relief from the automatic stay are not.

■ The debtor's submissions cry out for an independent trustee to investigate the debtor's financial affairs, marshal his assets, bring appropriate actions to recover property, and if necessary, object to the debtor's discharge. The Court has already identified many misstatements, inconsistencies and omissions in the debtor's papers which merit investigation. In addition, the debtor may have disposed of or concealed assets. First, in his 1992 petition, the debtor scheduled nine bank accounts—all held solely by him—containing aggregate deposits of $42,580.47. His current Schedule B (personal property) lists one unidentified checking account with

5. Section 109(g) provides:
 Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
 (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
 (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

6. Section 349(a), which governs the effects of dismissal, provides:

 Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

only $300.00, and his Statement of Financial Affairs states that he did not close any accounts within a year of the filing of the petition.

Second, his 1992 schedules stated that he owned property at 382 Central Park West with a net equity of $32,000.00, and he and his wife jointly owned property in Laurelton, Queens which the debtor listed as his principal address. His 1992 schedules alleged a market value of $150,000.00, and a net value, after subtracting liens, of $144,500.00. The debtor intended to fund a 100% plan by refinancing the Laurelton property. In her 1995 petition, Mrs. Eatman also scheduled their jointly owned Laurelton property.

The current schedules omit the Central Park West and Laurelton properties. In addition, in response to question no. 10 in his Statement of Financial Affairs, the debtor states that neither he nor his wife transferred any property outside of the ordinary course of business within a year preceding the filing of the current petition. It is possible that the debtor disposed of the Central Park West property after the first petition and more than one year before the present bankruptcy. The same cannot be said for the Laurelton property if one believes Mrs. Eatman's 1995 schedules. Either the debtor failed to disclose his interest in the Laurelton property, or lied in answer to question no. 10.

In addition, the debtor owns income earning property in Pennsylvania. The trustee can use that income—and ultimately sell the Pennsylvania property—to satisfy creditors' claims. Finally, the misstatements, inconsistencies and omissions regarding the petition, schedules and Statement of Financial Affairs may provide a basis to object to the debtor's general discharge.

Conversion under these circumstances promotes the interest of the creditors and the estate. The Condominium's uncontroverted submission indicates that it will have a substantial unsecured or undersecured claim made even larger by the sale of the Apartment through foreclosure rather than at the fair market value. *See BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994). The chapter 7 trustee's exercise of the Code-

given powers increases the likelihood that the Condominium and other unsecured creditors will recover more in bankruptcy than outside of bankruptcy. Conversion will also stem the debtor's continuing abuse of the bankruptcy process, and empower the trustee to call upon the debtor to account for those abuses by objecting to his discharge if the facts warrant it. If, on the other hand, the Court declines to convert the case, and either dismisses it or simply grants relief from the automatic stay, these advantages will be lost.

### D. Sanctions

The Court also concludes that the Condominium should recover sanctions against the debtor and his counsel. Rule 9011(a) of the Federal Rules of Bankruptcy Procedure provides in pertinent part:

Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

■ The debtor signed the petition, schedules, Statement of Financial Affairs and plan. The Court has already ruled that the debtor filed his petition in bad faith. Prompted only by the urge to frustrate the Condominium, he lacks any legitimate intent or objective ability to reorganize, and has misrepresented his assets and liabilities. This conclusion supports the award of sanctions under Rule 9011.

■ The debtor's attorney did not sign any of these documents, and did not even sign his own statement pursuant to Fed. R.Bankr.P. 2016. The Court cannot, therefore, award sanctions under Rule 9011. On its own motion, however, it will award sanctions under 11 U.S.C. § 105(a) and 28 U.S.C. § 1927. The latter provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■ "A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *In re Cohoes Indus. Terminal, Inc.,* 931 F.2d at 230 (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986)), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *accord In re French Bourekas, Inc.,* 175 B.R. 517, 523 (Bankr.S.D.N.Y.1994). Bad faith is a key element in imposing statutory sanctions both under 28 U.S.C. § 1927 and the Court's inherent power. *Oliveri v. Thompson,* 803 F.2d at 1273; *accord Milltex Industries Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 37 n. 4 (2d Cir.1995).

■ The findings of bad faith justifying sanctions against the debtor under Rule 9011 also justify the imposition of sanctions against the debtor's attorney. Although the debtor's present counsel did not file the prior cases, he never stated, in response to the motion, that he was not familiar with the history of the Eatmans' cases. In any event, he participated in the preparation and drafting of bankruptcy papers which listed the Condominium's foreclosure proceeding—thereby conceding the existence of a secured claim—but failed to schedule the secured claim or deal with it under the plan. Mr. Rolle therefore knew or should have known that he was participating with the debtor in filing a case designed to forestall the Condominium but that could not be confirmed under the proposed plan or any other plan.

The Court also notes that the Condominium moved expeditiously to dismiss the petition. *Cf. In re Cohoes Indus. Terminal,* 931 F.2d at 229 (a party who fails to move to dismiss a petition or otherwise alert a court to its purported frivolity is estopped from asserting that it was frivolously filed). In light of its motion, the imposition of sanctions under 28 U.S.C. § 1927 and 11 U.S.C. § 105(a)—instead of Fed.R.Bankr.P. 9011—does not catch counsel by surprise. After notice of the application for sanctions based upon the bad faith filing, Mr. Rolle never opposed that motion, or even argued that he could not be sanctioned under Rule 9011.

■ The Court will award sanctions against both the debtor and his counsel in the amount of the Condominium's attorney's fees, excess costs and expenses incurred in this case. The Condominium shall submit an affidavit within ten days of the signing of the order, settled in accordance with this opinion, setting forth, in detail, its excess costs, expenses and attorney's fees, and the debtor and his counsel shall have one week to respond in writing. In addition, the debtor's counsel is directed to pay the sum of $500.00 to the chapter 7 trustee upon his or her appointment. This represents the amount of the legal fee that the debtor paid to him in connection with this case, and constitutes property of the estate.

In conclusion, the Court grants the Condominium's motion for relief from the automatic stay, converts the case and awards sanctions. The Condominium's foreclosure sale cannot, however, take place earlier than 60 days following the entry of the conversion order for relief. This delay will afford the chapter

7 trustee an opportunity to object to the sale. If the chapter 7 trustee files an objection, the sale cannot go forward until the Court resolves it. To ensure that the trustee knows about the sale, the Condominium is directed to serve a copy of this decision, the resulting order and the notice of the sale date on the interim trustee promptly upon his or her appointment.

SETTLE ORDER ON NOTICE.