**In re Marisa BARCELLI, Debtor.**

No. 01–13732.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Oct. 22, 2001.

Cincinnati Bell Telephone, Cincinnati, OH, pro se.

Kevin R. Feazell, Cincinnati, OH, for creditor.

Andrew M. Temin, Cincinnati, OH, for debtor.

## ORDER GRANTING IN PART AND DENYING IN PART KINGSTON HOUSE CONDOMINIUM UNIT ASSOCIATION'S OBJECTION TO CONFIRMATION

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on Kingston House Condominium Unit Association's objection to confirmation (Doc. 19) and the Debtor's response (Doc. 29). A hearing was held on September 21, 2001.

The Association contends that the Debtor's arrearage to the Association is currently $21,199 and, therefore, that the plan is not feasible. Specifically, the Association contends that it has a "continuing" lien and that its lien includes late fees. The Debtor contends that her arrearage is limited to $8,954.32, the amount set forth in the Association's certificate of lien. The Debtor also contends that the late fees are outrageous and unreasonable.

The parties have raised important issues on which there is surprisingly little caselaw.

The statement attached to the Association's objection reflects the following. The Debtor failed to pay the regular monthly assessment of $398.64 for January 2000 and $65.84 for March 2000. The Debtor failed to pay the regular monthly assess-

ment of $560.52 for February 2000 and from May 2000 through July 2001. The Debtor failed to pay three special assessments of $262 for July, August, and September 2000.[1] The statement also reflects an attorney fee of $600 [2] and the following late fees [3]:

| | |
|---|---|
| Jan 2000 | $125 |
| Feb 2000 | $350 |
| Mar 2000 | no late fee |
| Apr 2000 | $255.20 |
| May 2000 | no late fee |
| June 2000 | $275 |
| July 2000 | $325 |
| Aug 2000 | $450 |
| Sept 2000 | $600 |
| Oct 2000 thru July 2001 | $800/month |

In October 2000, the Association recorded a certificate of lien on the Debtor's condominium unit for "that unit's unpaid portion of the common expenses and assessments of said condominium, including late fees and legal fees, in the amount of $8,954.32 through September 15, 2000, plus interest, costs, and attorney fees necessary to collect such amounts . . ."

■ It was questioned at the hearing whether this Court has jurisdiction to decide this matter. We believe that we do. Ohio Revised Code § 5311.18(C) creates an appeal procedure on behalf of a unit owner to challenge an unfair assessment in the appropriate court of common pleas. Such is not an exclusive grant of jurisdiction. In any event, this Court has jurisdiction when the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir.1996); *see also* 28 U.S.C. § 157(b)(2)(B) (core proceeding includes allowance or disallowance of claims against the estate).

■ We first address the issue of whether the lien is limited to the $8,954.32 amount stated in the certificate of lien or whether the lien is continuing and in the amount of the current assessments, whatever that amount may be.

Ohio Revised Code § 5311.18(A) states in part:

> Unless otherwise provided by the declaration or bylaws, the unit owners association shall have a lien upon the estate or interest of the owner in any unit . . . for the payment of the portion of the common expenses chargeable against the unit that remains unpaid for ten days after the portion has become due and payable.

The statute does not specifically provide for a continuing lien. We do not believe the statute has to so specifically provide. On this point, we find the case of *Washington Federal Savings and Loan Ass'n v. Schneider*, 95 Misc.2d 924, 408 N.Y.S.2d 588 (N.Y.Sup.Ct.1978) to be instructive. In *Washington Federal*, the court interpreted a similar New York statute that also did not specifically provide for a continuing lien. Recognizing the "apparent overriding concern" of the statute to "ensur[e] the continued viability of the entire condominium project and protect[ ] those who have invested substantial sums of their life savings from unit owners who have failed to pay their common charges," the *Washington Federal* court held that the statute covered "*all* unpaid common charges which have accrued." (emphasis in original). The Supreme Court of Ohio has also recognized the inherent collective unfairness of unit owners who do not pay

---

1. The unpaid regular monthly assessments and special assessments total $10,218.80.

2. The Debtor has not challenged the $600 attorney fee.

3. The late fees total $10,380.20.

their monthly expenses yet continue to receive the condominium service benefits at the expense of their fellow unit owners. *Nottingdale Homeowners' Ass'n v. Darby,* 33 Ohio St.3d 32, 514 N.E.2d 702, 706 (1987) (defaulting unit owner liable for reasonable attorney fees incurred in collecting unpaid assessments).

Thus, we find that the lien is not limited to those items properly chargeable as of the filing date of the certificate of lien. Rather, we find that the lien is a continuing lien and is in the amount of the current items properly chargeable against the unit.

This holding is supported by the fact that the by-laws for the condominium state that "All assessments or charges together with such interest thereon and costs of collection thereof, as hereinafter provided, shall be a charge on the unit and shall be a continuing lien upon the property against which each unit is made." *See* By-laws, Art. XII, § 1. Thus, the Debtor had constructive notice that such a continuing lien was possible.

■ We now address the proper amount of said continuing lien.

As reflected in the April 16, 1991 minutes of the Association's board of managers meeting, the Association adopted a new late charge policy as follows:

> Payments received between the 15th and 25th of the first delinquent month remain at $20.00 with the delinquency charge rising to $25.00 if not received by the end of the month. In addition, in the next month (again using the 15th cut-off date) the delinquency charge would be $50.00 with the third month being $100.00 and the fourth month being $200.00 and increase $100.00 per month for every month thereafter i.e., $300.00 the fifth month, $400 the sixth month.

We note that the condominium organizational documents are somewhat ambiguous with regard to late fees. Neither the by-laws nor the declaration specifically authorize the assessment of late fees or delinquent charges. The by-laws reference only the possible assessment of "interest, costs, and reasonable attorneys' fees" regarding unpaid assessments. *See* By-laws, Art. XII, § 6. However, a July 19, 1999 "welcome letter" references a delinquent charge that will accrue on unpaid assessments. The "present list of charges" referenced in the welcome letter is indicated to be on page 29 of the welcome letter; the welcome letter introduced into evidence at the trial stopped at page 28..

The applicable statute, Ohio Revised Code § 5311.18(A) allows for a lien for the payment of the "portion of *common* expenses chargeable against the unit that remains unpaid." (emphasis added). Common expenses, by definition, do not include late fees. *See In re Eatman,* 182 B.R. 386, 391 (Bankr.S.D.N.Y.1995).

In view of the lack of specific language in the declaration, by-laws or statute authorizing the imposition of late fees by the board, we question whether the Association is authorized to impose late fees at all. *See Walker v. Briarwood Condo Ass'n,* 644 A.2d at 636–37 (directors must be authorized to act and actions are authorized if the power to act is found in the statute governing such associations and in the by-laws). The Debtor has not raised this argument. Rather, the Debtor has questioned the amount of the late fees as being unreasonable. Thus, we so limit our inquiry. *Cf. First Federal Savings Bank v. WSB Investments, Inc.,* 67 Ohio App.3d 277, 586 N.E.2d 1159 (1990) (attorney fees assessed against unit owner even though declaration did not specifically provide for assessment of attorney fees).

Cases from other jurisdictions have held that fines or penalties are generally not assessable by condominium associations. *See Unit Owners Association of BuildAmerica–1 v. Gillman,* 223 Va. 752, 292 S.E.2d 378, 383 (1982) (imposition of fine is governmental power); *Walker v. Briarwood Condo Ass'n,* 274 N.J.Super. 422, 644 A.2d 634 (1994) (two $25 fines not permitted).

Rather than prohibiting fines altogether, one court has taken the approach that a unit owner may bargain to pay an amount of damages, but that said amount must be reasonable. If the amount of damages is unreasonable, it is an unenforceable penalty. *Hidden Grove Condominium Ass'n v. Crooks,* 318 Ill.App.3d 945, 253 Ill.Dec. 23, 744 N.E.2d 305 (2001) (compounding late fee of $25 for each month payment is late found to be unreasonable).

 One Ohio court of appeals has adopted a similar approach with regard to the validity of all condominium rules and adopted a reasonableness test. *Worthinglen Condominium Unit Owners Ass'n v. Brown,* 57 Ohio App.3d 73, 566 N.E.2d 1275, 1277 (1989) (rule prohibiting leasing of units found reasonable). The reasonableness test has three parts: 1) whether the decision or rule is arbitrary or capricious; 2) whether the decision or rule is discriminatory or evenhanded; and 3) whether the decision or rule was made in good faith for the common welfare of the owners and occupants of the condominium. *Id.* at 1277–78. Also, the rule must be reasonably implemented. *Id.* at 1278. In view of the Ohio Supreme Court's holding in *Nottingdale* that attorney fees must be reasonable in order to be assessed, we believe that the Ohio Supreme Court would endorse the reasonableness test set forth in *Worthinglen.*

In applying the *Worthinglen* reasonableness test to the present case, we find that the increasing fee schedule adopted by the Association is arbitrary and capricious. Although a monthly late fee of $20, $25, or even $50 is reasonable in view of the regular monthly assessment of $560.52, anything greater than 10% of the lost value of money is unreasonable. *See Hidden Grove Condominium Ass'n,* 253 Ill.Dec. 23, 744 N.E.2d at 307 (interest charge to recover lost value of money ranges between 5% and 10%). The default amount, increasing at a rate of $100 per month, does not reflect the costs necessary to maintain a past due account. Also, it appears that the Association failed to follow its own rule in that the late fees assessed against the Debtor do not follow the formula set out in the April 16, 1991 minutes. Thus, we also find that the rule was not reasonably implemented.

However, we do find that a monthly late fee of $50 is reasonable in that it is approximately 10% of the regular monthly assessment.

Consequently, we find that the association has an enforceable lien in the amount of $10,218.80 in unpaid assessments, plus $600 in attorney fees and $850 in late fees,[4] or in the total amount of $11,668.80.

The Debtor shall have 20 days from the entry date of this order in which to file an amended plan consistent with the ruling above.

IT IS SO ORDERED.

---

4. The association assessed late fees against the Debtor relative to 17 months.