ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} The West Chateau Condominium Unit Owners Association, Inc. ("West Chateau") appeals from an order of Judge Nancy R. McDonnell, that awarded it $7,609.83 from the proceeds of a foreclosure sale in satisfaction of its lien on a condominium unit owned by Jeremy Zanders. It claims it was error to find that its lien was limited to the costs and assessments that had accrued at the time the lien was recorded. It claims the award should have been increased to $15,948.31 because Zanders continued to accrue debt, in the form of unpaid maintenance fees and common expenses, between the time the lien certificate was filed and the time of the foreclosure sale. We reverse and remand on other grounds.
 {¶ 2} On September 29, 1999, West Chateau recorded a lien that claimed entitlement to $7,609.83, plus 10% annual interest from September 10, 1999, "for unpaid assessments to date" against Zanders' condominium. The unpaid assessments included maintenance fees and common expenses chargeable to Zanders' ownership interest in the common areas of the complex. On January 14, 2000, West Chateau filed a complaint for foreclosure.[1] The complaint also sought personal judgment against Zanders for all maintenance fees and common expenses that had accrued to that point, and for all such expenses that would subsequently accrue until the property was sold.
 {¶ 3} Zanders did not answer the complaint, and the judge entered a default judgment against him for the amount stated in the lien. In granting the default judgment, she adopted Magistrate Elizabeth Bagnato's decision that expressly refused to answer the question of whether West Chateau's recorded lien was sufficient to perfect its interest in Zanders' subsequent debts for unpaid fees. On September 1, 2000, the judge issued notice that a sheriff's sale would be held on October 2, 2000 and, on October 16, 2000, the judge approved the sale of the condominium.
 {¶ 4} On October 18, 2000, West Chateau recorded a second lien certificate, which sought to increase the amount of fees secured by the condominium to $15,948.31. It then filed a motion that claimed the sale had produced $27,820.66 in surplus funds, and it requested a distribution of $15,948.31.
 {¶ 5} Finally, on July 10, 2003, after an unexplained delay in ruling on the motion, the judge denied West Chateau's request to increase the amount secured by the lien. Her final order approved only the payment of $7,609.83, plus 10% annual interest from September 10, 1999, as well as $1,000.00 in attorney's fees. West Chateau states a single assignment of error, which is included as an appendix to this opinion. Zanders has not filed a responsive brief.
 {¶ 6} West Chateau concedes that its October 18, 2000 lien filing was untimely because it sought to secure debts owed by Zanders after the property had already been sold. It argues, however, that the September 29, 1999 lien should apply to all fees and expenses that accrued against Zanders until the sale. The judge ruled that the statute creating the lien, R.C. 5311.18, did not expressly authorize the September 29, 1999 lien to apply to subsequent debts, and she denied the motion to increase the distribution. R.C. 5311.18(A) states:
"Unless otherwise provided by the declaration or bylaws, theunit owners association shall have a lien upon the estate orinterest of the owner in any unit and the appurtenant percentageof interest in the common areas and facilities for the payment ofthe portion of the common expenses chargeable against the unitthat remains unpaid for ten days after the portion has become dueand payable. The lien is effective on the date a certificate oflien is filed for record in the office of the recorder of thecounty or counties in which the condominium property is situatedpursuant to authorization given by the board of managers. Thecertificate shall contain a description of the unit, the name ofthe record owner, and the amount of the unpaid portion of thecommon expenses and shall be subscribed by the president or otherchief officer of the unit owners association. The lien is validfor a period of five years from the date of filing, unless soonerreleased or satisfied in the same manner provided by law for therelease and satisfaction of mortgages on real property ordischarged by the final judgment or order of a court in an actionbrought to discharge the lien as provided in this section."
 {¶ 7} West Chateau claims that the statute should be interpreted to allow a recorded lien to perfect an interest in debts accumulated after the date of filing, but the judge correctly noted that the statute makes no such provision. In support of its argument, West Chateau cites In reBarcelli,[2] a bankruptcy case in which the judge ruled that R.C. 5311.18 should be interpreted to allow filed liens to reach after-acquired debts. Although there may be sound policy reasons to allow a condominium association's lien to reach unpaid fees as they accrue,[3] the statute does not so provide, and we do not find that the statute's effect reaches an unreasonable or absurd result,[4] nor has West Chateau shown that the statute is so violative of public policy[5]
that we must intervene.
 {¶ 8} Just as there may be sound policy reasons in favor of allowing a filed lien to reach after-acquired debts, there may be competing reasons to require condominium associations to file updated lien certificates as debts accrue. Adopting West Chateau's interpretation of R.C. 5311.18 would cause difficulty because the statute does not give adequate notice that a recorded lien would reach after-acquired debts. Recordation of a lien serves to notify others of real estate encumbrances, both to preserve the priority of a lienholder's interest and to notify potential lenders, buyers, or contractors of the interest.[6] R.C. 5311.18(A) requires the lien certificate to state the amount owed as of the date of filing, but it does not require filers to state the amount of monthly expenses that might accrue after that date, nor does it state whether those expenses would have priority as they accrue or as of the date of filing.[7]
 {¶ 9} Because the statute does not expressly provide for perfection as to after-acquired debts, and because it is insufficient to provide notice to others, we will not interpret it to perfect the lien with respect to debts that have not accrued at the time of filing.
 {¶ 10} Our conclusion that West Chateau failed to perfect its lien with respect to debts beyond $7,609.83, however, does not resolve the case. West Chateau claimed a lien amount totaling $15,948.31, and also claimed this amount could be paid from surplus sale proceeds. For this purpose, West Chateau needed to show only that it had a right to judgment against Zanders on its complaint.
 {¶ 11} In order to demand both foreclosure and collection against Zanders, West Chateau's complaint specifically demanded judgment against him for any unpaid future condominium fees, requesting as follows:
"(b) Plaintiff be granted judgment for all maintenance feesand assessments incurred subsequent to the filing of this actionin an amount to be determined, plus interest and costs."
 {¶ 12} After the sale, West Chateau's motion for distribution alleged that the sale proceeds yielded an excess of $27,820.66, and it sought payment of the $15,948.31 in claimed debt from those funds. Although the judge failed to enter a personal judgment against Zanders, West Chateau was entitled to such a judgment,[8] and to the extent the sale proceeds represent an excess that otherwise would be payable to Zanders, West Chateau is entitled to enforce its personal judgment from those proceeds without filing a separate action. The judge did not order a distribution of the excess to Zanders, but instead ordered the sheriff to hold the funds. However, because the record does not show the existence of any other claims in this proceeding, it appears that Zanders would have been entitled to the excess, and that the judge should have ordered satisfaction of West Chateau's personal judgment from those funds. The assignment of error is sustained, albeit on grounds other than those asserted.
 {¶ 13} Judgment reversed and case remanded for proceedings consistent with this opinion.
Cooney and Gallagher, JJ., concur.
 APPENDIX — ASSIGNMENT OF ERROR "The trial court erred in finding that appellant's lien forcondominium fees and assessments did not secure the additionalamounts properly chargeable to the condominium unit that accruedsubsequent to the recording of the lien."
It is ordered that the parties bear their own costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The complaint also named the following parties as defendants with an interest in the property; (1)Jane Doe, unknown spouse of Jeremy Zanders; (2) Banc One Financial Services, Inc., which held a mortgage on the property; and (3) James Rokakis, Cuyahoga County Treasurer, for tax assessments.
[2] (Bankr. S.D.Ohio 2001), 270 B.R. 837.
[3] Id. at 839-840.
[4] R.C. 1.47(C); State ex rel. Dispatch Printing Co. v.Wells (1985), 18 Ohio St.3d 382, 384, 18 OBR 437,481 N.E.2d 632.
[5] See, e.g., Painter v. Graley, 70 Ohio St.3d 377,1994-Ohio-334, 639 N.E.2d 51, paragraph three of the syllabus (public policy is revealed through legislative acts, state and federal constitutions, regulations, and common law).
[6] Wayne Bldg. Loan Co. v. Yarborough (1967),11 Ohio St.2d 195, 208-209, 40 O.O.2d 182, 228 N.E.2d 841.
[7] Id. at 216.
[8] We note, however, that although the record shows West Chateau was entitled to a personal judgment for subsequent fees, we express no opinion concerning whether the amount owed is, as West Chateau claims, $15,948.31. The exact amount of the personal judgment should be determined on remand.