BANKERS TRUST COMPANY, Respondent, v BOARD OF MANAGERS OF THE PARK 900 CONDOMINIUM, Appellant, et al., Defendants.

First Department, July 9, 1992

## APPEARANCES OF COUNSEL

*Gary M. Rosenberg* of counsel *(Jeffrey Turkel* with him on the brief; *Rosenberg & Estis,* attorneys), for appellant.

*Joel David Sharrow* of counsel *(Moses & Singer,* attorneys), for respondent.

*Stuart M. Saft* of counsel *(Eric B. Levine* with him on the brief; *Wolf Haldenstein Adler Freeman & Herz,* attorneys), for Council of New York Cooperatives, *amicus curiae.*

## OPINION OF THE COURT

Asch, J.

Plaintiff bank commenced this action in November 1989 to foreclose its first mortgage lien on two units, in the residential condominium known as the Park 900 Condominium, which were owned by nonappearing defendants Joseph and Josephine Pal. The Pals had stopped making payment of common charges on the two units in February 1988, but, notwithstanding this default, the board of managers approved a 3½-year lease of one of the units without requiring payment of the past due common charges. On November 13, 1989, the defendant board of managers filed notices of lien for the unpaid common charges for the two units which totaled (at that time) more than $50,000. Almost simultaneously with the commencement of this foreclosure action by the bank, the board of managers started its own foreclosure actions with respect to its liens for common charges. These actions were stayed with a stipulation that plaintiff bank's first mortgage lien has priority superior to the liens of the board of managers, and may not be cut off by the board's foreclosure actions.

Notwithstanding this stipulation, the board of managers asserts in this matter that its liens may not be cut off by the bank's foreclosure action and seeks payment of its liens out of the proceeds of the foreclosure sale by the bank or by the purchaser at such foreclosure sale.

The priority of liens is established by Real Property Law § 339-z which provides as follows:

"§ 339-z. Lien for common charges; priority; exoneration of grantor and grantee

"The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit, school district, special district, county or other taxing unit, and (ii) all sums unpaid on a first mortgage of record or on a subordinate mortgage of record held by the

New York job development authority or held by the New York state urban development corporation. Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee. Any grantor or grantee of a unit shall be entitled to a statement from the manager or board of managers, setting forth the amount of the unpaid common charges accrued against the unit, and neither such grantor nor grantee shall be liable for, nor shall the unit conveyed be subject to a lien for, any unpaid common charges against such unit accrued prior to such conveyance in excess of the amount therein set forth. Notwithstanding the above, the declaration of an exclusive non-residential condominium may provide that the lien for common charges will be superior to any mortgage liens of record."

Defendant board of managers asserting that the lien for common charges is not discharged in a first mortgage foreclosure proceeding relies upon the sentence above which reads: "Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee." In support of this position, the defendant cites various Supreme Court decisions, which assert that this interpretation is necessary to give effect to the words "or by the grantee", and hold, in effect, that a "hybrid" form of priority is created, since the holder of the first mortgage is given priority over the lien of the condominium, but whoever purchases at the foreclosure sale, even if the purchaser be the mortgagee as is the common practice, must pay the common charges, as "grantee" *(see, East Riv. Sav. Bank v Saldivia,* NYLJ, Oct. 11, 1989, at 21, col 4 [Sup Ct, NY County]; *Prudential Ins. Co. v Ward,* 150 Misc 2d 591; *Dime Sav. Bank v Campagna,* NYLJ, Oct. 31, 1991, at 27, col 1 [Sup Ct, Kings County]; *Dime Sav. Bank v Kakar,* NYLJ, Nov. 15, 1991, at 24, col 5 [Sup Ct, Queens County]).

The language cited by the defendant board was intended to apply to the *sale* or voluntary transfer of the condominium unit and *not* to the foreclosure sale to a first mortgagee. This interpretation is apparent since section 339-z expressly provides that the lien for unpaid common charges is superior to all other liens *except* "all sums unpaid on a first mortgage of record" (and other exceptions not relevant herein). The fact that the intention of the Legislature was to subordinate the priority of the common charges lien to a first mortgage is apparent from the final sentence of section 339-z which reads: "Notwithstanding, the above, the declaration of an exclusive

non-residential condominium may provide that the lien for common charges will be superior to any mortgage liens of record."

By specifying the possibility of a *non-residential* condominium declaration that the common charges would retain priority over *any* other mortgage liens, the statute obviously retains the priority of a recorded first mortgage in residential condominiums (and non-residential condominiums without such declarations).

"By thus specifically affording a mechanism for establishing the priority *to any mortgage* of a lien for common charges of an exclusive nonresidential condominium, the Legislature, by implication, has denied the lien for common charges of a residential condominium any right of priority to a first mortgage. Permitting the lien for common charges to survive a foreclosure sale would have the effect of creating such a priority and would be in contravention of the legislative intent." *(Long Is. Sav. Bank v Gomez,* 150 Misc 2d 482, 484; *see also, Green Point Sav. Bank v Knog,* NYLJ, Feb. 13, 1992, at 25, col 3 [Sup Ct, Queens County]; *Manufacturers Hanover v Kerr,* NYLJ, Oct. 31, 1991, at 24, col 6 [Sup Ct, NY County]; *Greater N. Y. Sav. Bank v Folks,* Sup Ct, Suffolk County, Sept. 3, 1991, index No. 8007/91; *Dime Sav. Bank v Nigro,* Sup Ct, NY County, June 7, 1991, index No. 5598/89; *Dime Sav. Bank v Damone,* Sup Ct, Nassau County, June 5, 1991, index No. 22513/89; *Bowery Sav. Bank v Lee,* Sup Ct, NY County, May 21, 1991, index No. 1670/90; *Dime Sav. Bank v Miles,* NYLJ, May 15, 1991, at 23, col 2 [Sup Ct, Bronx County]; *Long Is. Sav. Bank v Chun,* Sup Ct, Queens County, May 14, 1991, index No. 9741/90; *GMAC Mtge. Corp. v Butt,* Sup Ct, NY County, Feb. 15, 1991, index No. 16968/88; *Republic Natl. Bank v Joubert,* Sup Ct, Bronx County, Sept. 27, 1990, index No. 6657/90; *Beacon Fed. Sav. Bank v Parc Vendome,* Sup Ct, NY County, Mar. 2, 1990, index No. 20228/89.)

In a recent and comprehensive article on the precise issue in point herein, Bruce J. Bergman, Esq., the author of Bergman on New York Mortgage Foreclosures, after analyzing the various cases on both sides of the position, cites the IAS decision in the instant case by Justice Gammerman *(Bankers Trust Co. v Pal,* NYLJ, June 26, 1991, at 23, col 1 [Sup Ct, NY County]) as "[c]ontinuing the progression of authority supporting the superiority of a first mortgage over a condominium common charge lien". (Bergman, *First Mortgage vs. Condominium Common Charge Lien-in Legal and Political Battle,* 64

NY St BJ, 34, 37 [Jan. 1992]; *compare,* 1 Rohan and Reskin, Condominium Law and Practice, § 6.04 [3] [a] [ii], at 6-47, 6-48).

Professor Bergman further observes *(id.,* at 37) that:

"Although the clear weight of authority confirms that a first mortgage *is* superior to a condominium common charge lien, the issue has not been decided at the Appellate Division level. With the question not dispositively resolved, and because losing is potentially expensive, lenders and condominiums continue to joust whenever this point emerges in a mortgage foreclosure case * * *

"There are, to be sure, two sides to the competing desires. Lenders need the certitude previously mentioned. In any given situation, mounting common charges could be the difference between a bank recouping its interest or suffering a loss. If the condominiums prevail, needed mortgages on condominium units may be harder to obtain, or would at least cost more. That is hardly conducive to buttressing either commerce or the real estate market. On the other hand, the viability of some condominiums may indeed be threatened by loss of common charge income when units suffer foreclosure." (Emphasis in original.)

This ending section of his article is aptly titled "What Next— The Possible Clash of Law and Politics". *(Id.,* at 37.)

We need not belabor the obvious point—that in such a confrontation, this court does not have discretion. The resolution of the political or policy problem, as phrased by Professor Bergman, and alluded to by defendant-appellant and the Council of New York Cooperatives in its *amicus curiae* brief, as well as the plaintiff-respondent, lies with the Legislature. This court's sole function is not to decide on the basis of what the law *should be,* but solely to determine what the law *is.*

The legislative history supports this interpretation of the statute. The Condominium Act (Real Property Law art 9-B), adopted in 1964, first authorized this type of residential ownership in New York *(see,* L 1964, ch 82). The Banking Department in its report on the proposed Act stated, *inter alia,* "It is to be noted that first mortgages, but not subordinate mortgages, have priority over the lien upon individual units for their share of the charges with respect to the common elements [see, § 339-z]" (Mem of State Banking Dept on Condominium Act, Feb. 25, 1964, at 6, n 1, in Bill Jacket of L 1964, ch 82). When the statute was amended in 1974 to authorize

the declaration of an exclusive non-residential condominium to provide that the lien for common charges could be superior to any mortgage liens or record (L 1974, ch 1056, § 8), a memorandum submitted by Harvey Felton, Esq., the counsel to the Senate Judiciary Committee to Honorable Michael Whiteman, the Governor's Counsel in favor of the Act stated: "The amendment to § 339-z would permit the declaration of an exclusive *non-residential* condominium to provide that the lien for common charges will be superior to any mortgage liens of record. It should be noted that this change is merely permissive, so that lending institutions and developers may decide whether such procedure would be superior to the present absolute requirement that first mortgage liens precede liens for common charges in priority. Different mortgagees apparently take different views of this subject, necessitating flexibility." (Judiciary Comm In Support of Senate Bill S 7933, Jan. 29, 1974, at 3.) The Attorney-General's Memorandum for the Governor as to Senate Bill S 7933, dated May 10, 1974, contains an identical paragraph at page 4.

The Real Property Committee of the Association of the Bar of the City of New York noted with respect to Senate Bill S 7933:

"The final change would permit the declaration of an exclusively non-residential condominium to provide that the lien in favor of the board of managers for the common charges would be superior to mortgage liens of record.

"The acceptability of such a provision to lenders is problematical, but some would certainly prefer such a method to the present one whereby a defaulting unit's charges have to be absorbed by the remaining unit owners in those cases where the first mortgage on the defaulting unit is foreclosed and the lien for outstanding unpaid charges is cut off." (Assn of Bar of City of NY, Bulletin No. 4, Report No. 47, at 137, 141-142.)

When the statute was again amended in 1988 to give subordinate mortgages of the Urban Development Corporation the same lien priority earlier given to Job Development Authority subordinate mortgages, the Assembly's Legislative Memorandum noted: "The statutory protection of first mortgages of record against the risk of subordination to liens for subsequently accruing unpaid common charges should likewise be extended to subordinate mortgages held by UDC, and Section 339-z should be modified accordingly". (1988 McKinney's Session Laws of NY, at 2128, 2130.)

As an indication that this has always been the understanding and the intent of the Legislature, on May 2, 1991, Senate Bill S 5183-A, was introduced as amended on June 27, 1991, by S 5183-C. If enacted, this bill would have further amended the Real Property Law so to grant limited priority to a board's liens for unpaid common charges superior to that of a first mortgage of record even in a residential condominium. It provided, *inter alia,* that a valid claim by the board of managers on behalf of the unit owners for unpaid common charges assessed against the unit would have priority over a first mortgage in certain cases.

Finally, the by-laws of the defendant condominium, itself, recognize and give precedence to the lien of the first mortgage over any claim for common charges. Thus the by-laws provide: "A purchaser of a Unit shall be liable for the payment of Common Charges accrued and unpaid against such Unit prior to the acquisition by him of such Unit, except that, to the extent permitted by law, a purchaser of a Unit at a foreclosure sale of a Permitted Mortgage [such as plaintiff bank is foreclosing herein] shall not be liable for, and such Unit shall not be subject to, a lien for the payment of Common Charges accrued and unpaid against such Unit prior to the acquisition by said purchaser of such Unit. However, in the event of a foreclosure sale of a Unit by a Permitted Mortgagee [the plaintiff bank herein], the owner of such Unit prior to the foreclosure sale shall remain liable for the payment of all unpaid Common Charges which accrued prior to such sale."

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered June 10, 1991, which granted plaintiff Bankers Trust Company's motion for summary judgment, should be affirmed, without costs or disbursements.

ELLERIN, J. P., KUPFERMAN and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on June 10, 1991, unanimously affirmed, without costs or disbursements.