OPINION OF THE COURT
Martin B. Stecher, J.
This is an action to foreclose a mortgage on a condominium unit, 57-DM, in Trump Tower (the unit).
Defendant Trump Tower Condominium Board of Managers’ (the Board) notice of motion dated December 21, 1992 for summary judgment declaring certain rights; its notice of motion dated December 9, 1992 for the appointment of a temporary receiver; and its order to show cause returnable February 11, 1993, to vacate its default of plaintiff’s motion for summary judgment are consolidated for disposition.
The ground for the motion to vacate the default is the court’s alleged lack of jurisdiction over the Board, a challenge to the method of service.
The Board moves (1) for summary judgment of foreclosure and sale on its cross claim to foreclose a lien for unpaid common charges against the owner and mortgagor, defendant Charles & Company Acquisition, Inc. (Charles); (2) for sum *645 mary judgment on its counterclaim against plaintiff for a judgment declaring (CPLR 3001) that the Board’s lien for unpaid common charges has priority over a mortgage lien of the plaintiff in the amount of $743,055.40, dated December 28, 1990; and (3) for the appointment of a temporary receiver pursuant to Real Property Law § 339-aa, RPAPL 1325 and/or CPLR 6401.
Finally, plaintiff moves to amend the caption to delete as parties "John Does #1 to #10”. This portion of plaintiff’s motion is unopposed, is granted, and the order to be settled shall provide for the amended caption.
Dealing as we are with motions for summary judgment, the motions search the record.
The Board argues that it was not properly served with process because service was made by personal delivery to counsel for its managing agent.
Trump Tower Condominium’s declaration of condominium appoints its managing agent as agent to receive service of process on behalf of both the sponsor and the condominium, pursuant to the requirement of Real Property Law § 339-n (7). The condominium’s current managing agent is an entity known as the "Trump Organization” with offices in Trump Tower. It is undisputed that the process server went to the managing agent’s office and asked to be directed to the person authorized to accept service. He was shown to the office of, and there served, Joseph Tahl, an attorney, who stated that "he [was] an agent authorized by appointment to receive service at that address.”
The Court of Appeals has held that: "[W]hen [a] corporation is regularly doing business in the State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of defendant’s own employees, and delivered the summons according to their directions.” (Fashion Page v Zurich Ins. Co., 50 NY2d 265, 273 [1980].)
I see no reason why the rule should be different with respect to the managing agent of an unincorporated association designated in accordance with statute.
The Board was properly served and the court has jurisdiction over it (cf., Gillardi v Country Vil. Hgts. Condominium, 118 Misc 2d 947).
The Board argues that it has a meritorious defense to the judgment of foreclosure and sale because its lien for unpaid *646 common charges has priority over the lien of Charles’ mortgage given to plaintiff in the amount of approximately $743,055.40, dated December 28, 1990, and recorded on January 4, 1991. Plaintiff disputes that there is a second mortgage and claims that its lien is a first mortgage of $1,750,000 created by a consolidation and extension agreement, dated December 28, 1990, which consolidated an existing first mortgage in the then reduced amount of approximately $1 million with a new second mortgage. Plaintiff alleges that there was only one loan, one transaction, which Charles secured by a single mortgage.
Whether or not there was a second mortgage is critical because the condominium law, Real Property Law § 339-z, provides that a condominium board’s lien for unpaid common charges has priority over any other lien except a first mortgage (Bankers Trust Co. v Board of Mgrs., 181 AD2d 274 [1st Dept 1992]). A condominium board’s lien is prior to a second mortgage even if the condominium’s lien was recorded subsequent to the recording of the second mortgage; as it was in this case (Washington Fed. Sav. & Loan Assn. v Schneider, 95 Misc 2d 924 [Sup Ct, Rockland County 1978]; Real Property Law § 339-aa).
The undisputed facts do not support the claim that there was but one loan.
A prior owner of the unit, Karl Springer, Ltd. (Karl), on January 16, 1985, executed a mortgage in the amount of $1,250,000 to Citibank which was recorded on March 14, 1985 (the first mortgage). The sole statement in the record as to how Charles came to own the unit is the affirmation of Charles’ attorney, Stephen Eisenberg, dated January 3, 1993, which states, at paragraph 4, that, "Charles is the current fee owner of the aforementioned condominium unit for which is [sic] paid $2,600,000.00 on November 19, 1990.” On December 28, 1990, Citibank assigned the first mortgage to plaintiff; Charles executed and delivered the second mortgage to plaintiff; and Charles and plaintiff entered into the consolidation and extension agreement, consolidating the first and second mortgages into a single lien. The assignment was recorded on January 3, 1991. The second mortgage and the consolidation agreement were recorded on January 4, 1991. The Board’s lien for unpaid common charges was recorded on November 9, 1992.
The consolidation agreement’s "Exhibit B,” entitled "De *647 scription of the Mortgages,” clearly identifies two separate mortgage liens and reads, in part, as follows:
"1. Mortgage made by Karl Springer, Ltd. to Citibank, N.A., dated January 16, 1985, recorded in the Office of the Register of the City of New York, County of New York, on March 14, 1985 in Reel 886 of Mortgages, page 1521, and the note therein referred to, which note and mortgage were given to secure the payment of the principal sum of $1,250,000 with interest thereon at the rate specified in said note; upon which mortgage there is now owing and unpaid the principal sum of $1,006,944.60.
"2. Mortgage made by Charles & Company Acquisition, Inc., to Societe Generale dated December 28, 1990, intended to be recorded in said Register’s office, and the note therein referred to, which note and mortgage were given to secure the payment of the principal sum of $743,055.40 with interest thereon at the rate specified in said note; upon which mortgage there is now owing and unpaid the principal sum of $743,055.40.”
A consolidation agreement does not change the priority of liens held by those not parties to the agreement. It is an agreement for the convenience of the parties making it.
In Skaneateles Sav. Bank v Herold (50 AD2d 85 [4th Dept 1975], affd 40 NY2d 999) it was held that a second mortgagee, who loaned an additional $10,000 to the mortgagor and consolidated the new loan with the original second mortgage of $78,000, was entitled to priority over an intervening third mortgagee only to the extent of the original $78,000 second mortgage lien.
In Dominion Fin. Corp. v 275 Washington St. Corp. (64 Misc 2d 1044 [Sup Ct, Westchester County 1970]) a lease was recorded between the recording of the second and third mortgages, which were thereafter consolidated. The tenant was not a party to the consolidation agreement. In holding that the consolidation agreement could not advance the third mortgage to priority over the lease, the court held that: "A consolidation agreement is an instrument of convenience for the contracting parties only. The execution and delivery of a consolidation and extension agreement, absent a consent or subordination thereto, cannot adversely affect, impair or derogate the priorities of lien of any interests which have effectively intervened between the respective dates of execution and delivery of the two mortgages which were consolidated” (supra, at 1046).
The condominium law (Real Property Law §§ 339-z, 339- *648 aa) put all potential mortgagees on notice that a condominium’s lien for unpaid common charges would have priority over all liens other than first mortgages. A consolidation and extension agreement consolidating two mortgages executed, delivered and recorded almost six years apart, cannot divest the condominium of the priority of its lien over the subordinate mortgage.
The legislative history of Real Property Law § 339-z supports this result. The Memorandum of the Joint Legislative Committee on Housing and Urban Development (L 1964, ch 82, 1964 McKinney’s Session Laws of NY, at 1839) stated that one of the positive financial aspects of condominium ownership was that a "condominium unit [would] qualify for a mortgage guarantee by the FHA under Section 234 of the National Housing Act of 1961,” thus enabling middle income people to afford housing. Section 234 (b) of the National Housing Act provided that "the term 'mortgage’ for the purposes of this section may include a first mortgage given to secure the unpaid purchase price of a * * * one-family unit in a multifamily structure and an undivided interest in the common areas and facilities.” (Pub L 87-70, § 104 [emphasis supplied].)
According priority to a second mortgage simply because it was consolidated with a first mortgage, might run afoul of the legislative purpose of enabling middle class condominium buyers to take advantage of FHA guaranteed purchase money mortgages.
Indeed, the second mortgage in this case was not a purchase money mortgage at all. It was executed and delivered more than a month after the purchase.
The Board’s lien for unpaid common charges is superior to the lien of the plaintiff’s second mortgage.*
Having established its meritorious defense, the Board’s default in answering is cured and the order of November 16, 1992, granting summary judgment to plaintiff against the Board on default, is vacated. The Board’s motion for summary judgment on its counterclaim declaring the priority of its lien over the plaintiff’s second mortgage is granted. The Board’s *649 motion for summary judgment on its cross claim against Charles for unpaid condominium common charges is granted. The amount thereof must await the appointment of a Referee to compute.
The Board has moved for the appointment of a temporary receiver to collect rents and profits during the pendency of this action. It appears that at present there are neither rents nor profits to be collected as the unit is vacant.
Plaintiff and Charles oppose the appointment of a receiver on the ground that it will only delay the foreclosure and will adversely affect the sale of the unit. The Board contends that failure to rent the unit temporarily will result in a monthly loss of $2,000 to the condominium that will be borne by all the unit owners if sufficient proceeds to pay the lien are not realized upon the sale.
Real Property Law § 339-aa provides that a condominium’s lien for unpaid common charges may be foreclosed in the same manner as a mortgage on real property and that, "[i]n any such foreclosure the unit owner shall be required to pay a reasonable rental for the unit for any period prior to sale pursuant to judgment of foreclosure and sale, if so provided in the by-laws, and the plaintiff in such foreclosure shall be entitled to the appointment of a receiver to collect the same.” (Emphasis supplied.)
The bylaws of the condominium, article 6, § 6.7, at 25, contain essentially the same language.
The language of the statute and bylaws only authorize appointment of a receiver to collect rent from the "unit owner”. They do not entitle the Board to a receiver to rent the property to a third person and collect rent from him or her.
Even if the statute were interpreted to authorize appointment of a receiver, the decision to do so still rests within the discretion of the court. Appointment of a receiver is a drastic remedy which may unnecessarily increase the cost of litigation (S.Z.B. Corp. v Ruth, 14 AD2d 678 [1st Dept 1961]). It should only be granted where it is necessary to protect the interests of the parties (supra). Appointment of a receiver may be denied where the property is sufficient security for the debt and the property is not in danger (Eastbank v Malneut Realty Corp., 180 AD2d 442 [1st Dept 1992]).
The condominium unit is sufficient security for the Board’s lien and there is no claim made that the vacant apartment will deteriorate. The apartment was sold for *650 $2,600,000 in November of 1990, and the first mortgage at this time is approximately $1,000,000, providing ample security for the Board’s lien, which was approximately $25,000 at the time of this application and which increases at the rate of approximately $2,000 per month. A receiver’s fee would unnecessarily add to the cost of litigation because applications to the court to approve proposed leases and tenants would ensue.
[Portions of opinion omitted for purposes of publication.]

 The court will not speculate on what the result might have been had Karl Springer, Ltd., caused the original first mortgage to be satisfied at the time Charles took title and a new first mortgage in the aggregate sum obtained. At the least we know that there would have been a substantially increased mortgage tax.