*481 OPINION OF THE COURT
Howard Miller, J.
Motion by plaintiff for summary judgment. The motion is granted and the matter referred to Morton Lieb, Esq., of Orangeburg, New York, to compute the amount due plaintiff and to determine whether the property can be sold as one parcel.
By demonstrating the validity of the note and mortgage and defendants Levys’ failure to make payment according to their terms, plaintiff has established a prima facie case for summary judgment (see generally, Marine Midland Bank v Micheli Contr. Corp., 95 AD2d 946). To defeat plaintiff’s motion, a defendant must raise a meritorious defense (Johnson v Gaughan, 128 AD2d 756). In opposition to the motion, defendant Board of Managers of Sussex at Bremmer Condominium (Sussex) asserts its first affirmative defense that plaintiff’s mortgage is not a first mortgage. The priority of liens is not a defense to a summary judgment motion to foreclose a mortgage.
However, a motion for summary judgment searches the record and the parties have made it clear that they have charted a course for summary judgment on Sussex’s first affirmation defense relating to the priority of plaintiff’s lien.
Defendant Sussex’s lien for common charges, accruing from August 1, 1992, was filed January 22, 1993, and is entitled by virtue of Real Property Law § 339-aa to priority over all other liens except liens for taxes, first mortgages and certain second mortgages not applicable here.
Sussex argues that the plaintiff, by consolidating a December 3, 1986 first mortgage in the original sum of $117,000 with a $4,078.18 mortgage, executed August 12, 1991, lost its priority as a first mortgagee, citing Societe Generate v Charles & Co. Acquisition (157 Misc 2d 643). In Societe Generate, the court held that plaintiff, by consolidating an existing first mortgage of approximately $1,000,000 with a subsequently executed mortgage of approximately $750,000, was entitled to priority only to the extent of the existing first mortgage, and that the subsequently executed mortgage was subordinate to the lien of the condominium board for common charges filed almost two years after the filing of the consolidation agreement.
Plaintiff’s December 3, 1986 mortgage is clearly entitled to priority over Sussex’s lien (Bankers Trust Co. v Board of *482 Mgrs., 81 NY2d 1033). The August 12, 1991 mortgage for $4,078.18 did not discharge the original indebtedness under the December 3, 1986 mortgage, which on August 12, 1991 was $113,658.08. Thus, the consolidation agreement did not lessen plaintiff’s priority position as to the December 3, 1986 mortgage (Bank of N. Y. v Cerasaro, 98 AD2d 902).
As to the superiority of Sussex’s lien to the August 12, 1991 mortgage, the court has considered the Societe Generate case (supra) and respectfully disagrees with so much of the decision that holds that a subsequently executed mortgage retains its status as a second mortgage despite its consolidation with a prior first mortgage in the absence of an intervening lien.
It is well settled that a consolidation and extension agreement is an instrument of convenience for the contracting parties only and cannot adversely affect, impair or derogate the priorities of any lien which has intervened between the respective dates of execution and delivery of the two consolidated mortgages, and for purposes of determining priority when there is an intervening lien, the mortgages retain their separate-lien status (Dominion Fin. Corp. v 275 Washington St. Corp., 64 Misc 2d 1044, 1046, citing Remodeling & Constr. Corp. v Melker, 65 NYS2d 738, affd 270 App Div 1053; Schuck v Kings Realty Co., 260 App Div 1021, affd 285 NY 750; Toner v Ehrgott, 266 App Div 244).
In this case, however, Sussex’s lien was nonexistent at the time of the execution of the August 12, 1991 mortgage, and the common charges remained current until almost a year later. The consolidation agreement clearly states that: "By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender’s rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. * * * The Consolidated Mortgage secures the Consolidated Note and is a single lien upon the Property.”
The plain language of the consolidation agreement indicates that the intent of the parties was to merge the mortgages into one single lien. Had the Sussex lien been in existence at the time of the execution of the August 12, 1991 mortgage, it would have been afforded priority over that mortgage, despite *483 the consolidation agreement. However, to afford priority to a lien for common charges accruing years after the filing of a consolidation agreement would severely impact the ability of a condominium owner to refinance. Given the legislative intent in enacting Real Property Law § 339-z to enable middle-income people to afford housing, it would be counterproductive to discourage this method of refinancing — which is otherwise available to homeowners — simply because the homeowner has elected to purchase a condominium. To hold otherwise is tantamount to compelling condominium owners to execute a new first mortgage, with the attendant costs, even where, as here, the refinance involves but a small percentage of the mortgage debt.
Accordingly, the priority of plaintiff’s original mortgage lien remains unaffected by the consolidation agreement, and the priority of that original mortgage lien extends to the August 12, 1991 mortgage (In re Earl, 147 Bankr 60).