OPINION OF THE COURT
Karla Moskowitz, J.
Defendant Board of Managers of the Belgravia Condomin *889 ium (the Board) moves for an order vacating its default, recalling the judgment entered in this action and amending that judgment to reflect the Board’s interest in the condominium unit at issue.
Plaintiff Greenpoint Bank (Greenpoint) brought this action to foreclose a mortgage lien against condominium unit 14C (Unit 14C) in the Belgravia Condominium. The complaint, filed in August 1998, alleges that the mortgage was in default since December 1, 1997. Greenpoint held a first mortgage on the property, which it originally gave in 1986 to the prior owner of the unit, in the original principal amount of $263,000. Green-point extended a second mortgage to the current owner, defendant Eetmad El-Basary, also known as Etemade El-Balasey (El-Balasey), on October 7, 1997, in the original principal amount of $75,000. Also on October 7, 1997, the two mortgages were consolidated, with a principal amount of $250,000. The mortgages and consolidation agreement were recorded on April 23, 1998. Prior to the consolidation, all three of the Board’s liens for the common charges relating to Unit 14C, totaling $16,377.68, were satisfied. Three certificates of satisfaction were executed and subsequently recorded.
After that, El-Balasey never made any payments to Green-point on the consolidated mortgage. Neither the report of the Referee in this case nor the judgment distinguishes between the two loans. Instead, the interest is calculated on the consolidated amount, and the judgment gives Greenpoint the right to incorporate additional interest accruing from April 1, 1999 in the final distribution of the proceeds from the foreclosure sale.
The Board alleges that the failure to distinguish between the two loans is erroneous. The Board claims that it has not been paid its common charges since October 1997 and is currently owed $18,287.29. On October 2, 1998, the Board filed a lien for unpaid common charges. The Board maintains that, pursuant to Real Property Law § 339-z, only the amount of the first mortgage, which was approximately $175,000, has priority over the Board’s lien for unpaid common charges.
Real Property Law § 339-z provides: “The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only * * * (ii) all sums *890 unpaid on a first mortgage of record.” In this motion, the Board raises the question of whether the consolidated mortgage constitutes a first mortgage of record, or whether it is actually two separate mortgages, with only the remaining amount of the 1986 mortgage qualifying as a first mortgage of record.
The consolidation agreement states: “By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender’s rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.” The agreement further states that Greenpoint has only one lien on the property. This language indicates that the parties intended to combine both obligations into one first mortgage, resulting in one lien on the property.
The Board relies upon Societe Generale v Charles & Co. Acquisition (157 Misc 2d 643) in seeking to set aside the consolidation as defeating the Board’s statutory right to priority. Greenpoint relies upon Dime Sav. Bank v Levy (161 Misc 2d 480) to support its position that the portion of the loan that was originally the second mortgage had priority over the Board’s lien for common charges, because there were no outstanding common charges at the time that the second mortgage was executed and because of the consolidation at that time of the two mortgages. Research has not disclosed any other decisions directly addressing this issue.
The Board argues that, because this consolidation was not of a purchase-money mortgage, this court would defeat the intent of the Legislature by construing the consolidation as creating one first mortgage.
This argument is not compelling. The statute does not provide that the common charge lien is subordinate only to a purchase-money mortgage. The common charge lien is subordinate to “all sums unpaid on a first mortgage of record.” Had the Legislature intended the subordination to apply only to purchase-money mortgages, the Legislature could and would have so stated. That the Legislature said “first mortgage of record” leads this court to construe the phrase to mean any first mortgage of record, regardless of whether it was for the purpose *891 of purchasing the condominium.* (See, e.g., Board of Mgrs. v Richardson, 238 AD2d 282.)
There is no question that a consolidation and extension agreement cannot adversely affect the priorities of any lien that has intervened between the date of the original mortgage and the consolidation agreement. (Federal Deposit Ins. Corp. v Five Star Mgt., 258 AD2d 15; see also, Dime Sav. Bank v Levy, 161 Misc 2d 480, supra, and cases cited therein.) Here, however, as in Dime Sav. Bank, the Board did not have any lien at the time of the execution of the October 7, 1996 mortgage. Thus, the consolidation did not interfere with the Board’s prior rights.
Relying on Societe Generate (supra), the Board maintains that its lien for common charges is nonetheless superior to $75,000 of the consolidated mortgage. In Societe Generate, the court stated that a condominium board’s lien for unpaid common charges has priority over a second mortgage even if the Board recorded its lien subsequent to the second mortgage’s recordation. The court further stated that a consolidation agreement does not change the priority of liens held by those who are not parties to the agreement. Both of these propositions are hornbook law. (See, e.g., Federal Deposit Ins. Corp. v Five Star Mgt., 258 AD2d 15, supra; Washington Fed. Sav. & Loan Assn. v Schneider, 95 Misc 2d 924.) However, this court respectfully disagrees with so much of the holding in Societe Generate as indicates that, even where there is no intervening lien, there cannot be a consolidation as against a Board’s lien arising at a later time.
A statute that is enacted in derogation of the common law must be strictly construed. (Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81.) Further, that construction must be as narrow as the words and underlying purpose of the statute permit. (Supra.) Real Property Law § 339-z creates a priority in favor of condominium boards that is in derogation of the common-law principle of “first in time, first in right.” Without this statutory creation, the Board would not be entitled to any priority over any previously recorded liens. Thus, this court must narrowly construe the Board’s right to priority. The Board’s lien cannot defeat an earlier lien unless the statute clearly intended that lien to be subordinate.
*892 The language of Real Property Law § 339-z states unequivocally that all sums unpaid on a first mortgage of record, which is recorded prior to the recording of a lien for common charges, have priority over the lien for common charges. In this case, •the consolidation agreement is clear that the parties to the mortgage agreement intended the consolidation to result in only one mortgage, which the lender' duly recorded. All prior liens, including the Board’s lien for common charges, were satisfied. No liens, recorded or unrecorded, existed at the time of the consolidation. Thus, the consolidation does not affect any existing lien. (See, Dime Sav. Bank v Levy, 161 Misc 2d 480, supra; Bergman, New York Mortgage Foreclosures § 36.02 [4] [b], at 36-11 [Matthew Bender & Co., Inc., rev 1996].)
The statute does not preclude a condominium owner from refinancing by satisfying a prior mortgage and obtaining another first mortgage in a larger amount. Under such circumstances, there is no question that the new first mortgage would take priority over the Board’s lien. (See, Board of Mgrs. v Richardson, 238 AD2d 282, supra.) The situation presented in this case is, in all practical respects, no different. Moreover, to construe the statute in the manner the Board advocates would result in an improperly broad reading of the statute, by judicially precluding the priority of consolidated mortgages that the Legislature never precluded. Accordingly, the consolidated mortgage is the first mortgage of record and has priority over the later-arising lien of the Board for common charges. Inasmuch as the Board has failed to demonstrate a meritorious defense, its motion to vacate the default is denied. (CPLR 317, 5015.)
The Board contends that it was not served properly, and, therefore, is not properly subject to this court’s jurisdiction. The issue of whether the Board was served properly by service of the summons and complaint upon its superintendent, who allegedly stated that he had authority to accept service of process, need not be addressed. Greenpoint filed a notice of pendency on August 20, 1998, more than a month before the Board filed its lien for unpaid common charges. As a result, the Board was charged with constructive knowledge of the underlying proceeding and is bound by any decision in this case. (CPLR 6501.)
Accordingly, it is hereby ordered that the motion is denied.

 It is noted that, since the initial drafting of this section, there have been amendments expanding the class of lenders with respect to whom the common charges do not have priority. (See, Real Property Law § 339-z [as amended by L 1988, ch 672, and L 1997, ch 349].) The statute does not limit the priority of any of these lenders to purchase-money mortgages.