[992 NYS2d 844]

AMT CADC Venture, LLC, Plaintiff, v 455 CPW, L.L.C., et al., Defendants.

Supreme Court, New York County, October 18, 2013

### APPEARANCES OF COUNSEL

*Greenberg Traurig, LLP*, New York City (*Steven Sinatra* of counsel), for plaintiff.

*Gallet Dreyer & Berkey, LLP*, New York City (*Edward M. Cuddy III* of counsel), for Board of Managers of the 455 Central Park West Condominium, defendant.

### OPINION OF THE COURT

Lucy Billings, J.

## I. Background

Plaintiff sues to foreclose on a consolidated mortgage assigned to plaintiff, encumbering three residential units and a commercial garage unit in a condominium building. Defendant sponsor and owner of the mortgaged condominium units, 455 Central Park West, L.L.C. (455 CPW), defaulted on the mortgage in September 2009. Defendant Board of Managers of the 455 Central Park West Condominium operates the condominium and counterclaims and cross-claims to foreclose a statutory lien for unpaid common charges on those mortgaged units. (Real Property Law § 339-z.)

Plaintiff moves, and the Board of Managers cross-moves, for summary judgment (CPLR 3212 [b], [e]), on their respective claims to foreclosure on their liens, which each party maintains is entitled to priority over the other lien under New York's Condominium Act (Real Property Law §§ 339-d—339-kk). For the reasons explained below, the court grants plaintiff summary judgment and denies defendant Board of Managers summary judgment on this issue.

## II. Applicable Standards

The moving parties, to obtain summary judgment, must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence eliminating all material issues of fact. (CPLR 3212 [b]; *Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]; *Smalls v AJI Indus., Inc.*, 10 NY3d 733, 735 [2008]; *JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384 [2005]; *Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003].) If the moving party satisfies this standard, the burden shifts to the opponent to rebut that prima facie showing, by producing evidence, in admissible form, sufficient to require a trial of material factual issues. (*Morales v D & A Food Serv.*, 10 NY3d 911,

913 [2008]; *Hyman v Queens County Bancorp, Inc.*, 3 NY3d 743, 744 [2004].) In evaluating the evidence for purposes of the parties' motions, the court construes the evidence in the light most favorable to the opponent. (*Vega v Restani Constr. Corp.*, 18 NY3d at 503; *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 37 [2004].)

III. Priority of Liens

On September 14, 2007, Amtrust Bank extended a loan to defendant 455 CPW, which in turn gave a mortgage on five residential units and a commercial garage unit to Amtrust Bank. This mortgage was consolidated with three prior recorded mortgages given by 455 CPW. The consolidated mortgage was recorded November 27, 2007. Plaintiff acquired the mortgage July 21, 2010 after Amtrust Bank ceased operating. The Board of Managers recorded liens for unpaid common charges on three of the five residential units and the garage on August 13, 2009. Regarding liens for common charges, Real Property Law § 339-z provides that "[t]he board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only . . . (ii) all sums unpaid on a first mortgage of record . . . ." (*See Bankers Trust Co. v Board of Mgrs. of Park 900 Condominium*, 81 NY2d 1033, 1035 [1993]; *Cadlerock Joint Venture v Board of Mgrs. of Parkchester S. Condominium*, 289 AD2d 1 [1st Dept 2001].)

A. Express Statutory Terms Demonstrating the Meaning of "First Mortgage"

The dispute centers on whether plaintiff's lien based on its assigned consolidated mortgage is entitled to priority over the Board of Managers' lien for unpaid common charges in the condominium. Resolution of this issue turns on whether plaintiff's mortgage is an unpaid first mortgage of record, the term used in Real Property Law § 339-z, but otherwise undefined in the Condominium Act. The Board of Managers contends that plaintiff's mortgage is not a first mortgage because it is a blanket mortgage that was not for the purchase of a unit.

Absent a controlling statutory definition, the court must construe the statutory terms according to their usual and commonly understood meaning. (*Matter of Orens v Novello*, 99 NY2d 180, 185-186 [2002]; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479 [2001].) Dictionary definitions may be used to aid in determining the meaning of a word or phrase.

(*Orens v Novello*, 99 NY2d at 186; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d at 479-480; *see Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 284 [2009].) The dictionary definitions of first mortgage that plaintiff urges are circular, defining a first mortgage as simply a lien that gives priority to the lender. Consistent with the guidepost of usual and commonly understood meaning, however, the definition of first mortgage of record adopted decades ago is also simple, but more straightforward: the earliest recorded mortgage. (*Rector, Wardens & Vestrymen of Church of St. Matthew & St. Timothy in City of N.Y. v Title Guar. & Trust Co.*, 246 App Div 251, 254 [1st Dept 1936].)

As long as the statutory terms are unambiguous, the court must give effect to that plain meaning, as a statute's express terms are the best indicator of legislative intent. (*Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712, 721 [2012]; *Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]; *Perdomo v Morgenthau*, 60 AD3d 435, 436 [1st Dept 2009]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 94; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d at 286.) The term "first mortgage of record" (Real Property Law § 339-z) does not indicate any limitation to mortgages for the purchase of units. (*See New York County Lawyers' Assn. v Bloomberg*, 19 NY3d at 722.) Although the Condominium Act's provisions address blanket mortgages (Real Property Law §§ 339-r, 339-ee [2]), nothing in the Condominium Act prohibits a blanket mortgage from being a first mortgage. Had the legislature intended to limit first mortgages to those mortgages given for the purchase of condominium units or to exclude blanket mortgages from first mortgages of record, then the statutes would have so provided. (*Greenpoint Bank v El-Basary*, 184 Misc 2d 888, 890 [Sup Ct, NY County 2000]; *see Matter of Amorosi v South Colonie Ind. Cent. School Dist.*, 9 NY3d 367, 373 [2007]; *Orens v Novello*, 99 NY2d at 189.)

While no decision other than *Rector, Wardens & Vestrymen of Church of St. Matthew & St. Timothy in City of N.Y. v Title Guar. & Trust Co.* (246 App Div at 254) expressly adopts the definition of a first mortgage of record as the earliest recorded mortgage, other decisions are consistent with that definition. As in *Board of Mgrs. of Parkchester N. Condominium v Richardson* (238 AD2d 282, 284 [1st Dept 1997]), which found a bank's

unpaid mortgage, given by a cooperative apartment owner, to be a first mortgage of record with priority over the cooperative board of managers' lien for unpaid common charges, here the parties do not dispute that the mortgage lien was recorded earlier than the lien for common charges or that the mortgage is "unpaid." (Real Property Law § 339-z [ii].) In fact the Appellate Division rejected the board of managers' priority even though the board held a prior mortgage given by a prior owner of the cooperative apartment for which a satisfaction had not been filed, because the mortgage had been paid. (*Board of Mgrs. of Parkchester N. Condominium v Richardson*, 238 AD2d at 283-284.) Other decisions follow this holding by similarly focusing on the earlier recording and the fact that a mortgage is "unpaid." (Real Property Law § 339-z [ii]; *see Plotch v US Bank N.A.*, 39 Misc 3d 1204[A], 2013 NY Slip Op 50490[U] [Sup Ct, Richmond County 2013]; *Greenpoint Bank v El-Basary*, 184 Misc 2d at 892; *Foxwood Run Condominium v Goller Place Corp.*, 166 Misc 2d 216, 218 [Sup Ct, Richmond County 1995]; *Dime Sav. Bank of N.Y. v Levy*, 161 Misc 2d 480, 483 [Sup Ct, Rockland County 1994].) *Societe Generale v Charles & Co. Acquisition* (157 Misc 2d 643, 648 [Sup Ct, NY County 1993]), holding to the contrary, unnecessarily relied on the National Housing Act (12 USC § 1715y), which in any event does not define a "first mortgage" to exclude plaintiff's mortgage, as explained below.

The term "first mortgage of record" in New York's Condominium Act (Real Property Law § 339-z), as legislation in derogation of the common law, must be construed strictly. (*Pekelnaya v Allyn*, 25 AD3d 111, 118 [1st Dept 2005].) *Board of Mgrs. of Parkchester N. Condominium v Richardson* (238 AD2d at 284) amplifies the application of this principle to that very term when the court gives priority to the "unpaid . . . first mortgage of record" (Real Property Law § 339-z [ii]) over the *unsatisfied* prior mortgage of record.

## B. The Court Need Not Analyze the Legislative Policies Behind the Condominium Act

The legislature's expression most indicative of its intent, its unambiguous statutory terms, leaves no reason to resort to statutory construction. (*Amorosi v South Colonie Ind. Cent. School Dist.*, 9 NY3d at 373; *see People v Ballman*, 15 NY3d 68, 72 [2010]; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d at 286.) Although the Board of Managers maintains that Real

Property Law § 339-z is ambiguous, necessitating an analysis involving statutory construction, any such ambiguity arises only from the Board of Managers' interpretations. (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d at 286; *Matter of 73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal*, 96 AD3d 524, 528 [1st Dept 2012].)

Even were the court to consider the policies and purposes behind the Condominium Act as the Board of Managers contends, a limitation of first mortgages to only purchase money mortgages still would not be warranted. The Board contends that the policy behind Real Property Law § 339-z and its companion statutes is to support apartment ownership by giving priority to banks' mortgages as an incentive for banks to extend mortgages to prospective condominium unit purchasers (*see Dime Sav. Bank of N.Y. v Pesce*, 93 NY2d 939, 941 [1999]), and to discourage condominium sponsors from stockpiling units instead of selling them. Affording priority to an unpaid mortgage recorded before an unpaid lien for common charges, whether the mortgage is for the purchase of a unit or not, provides an incentive to banks to extend mortgages for the purchase of units. The Board of Managers does not explain, on the other hand, nor does the court conceive of how limiting first mortgages to purchase money mortgages would discourage sponsors from retaining units.

## C. Reliance on Federal Statutes is Unnecessary

For similar reasons, the court need not rely on the National Housing Act, which defines first mortgages as: "such classes of first liens as are commonly given to secure advances on, or the unpaid purchase price of, real estate, under the laws of the State, in which the real estate is located, together with the credit instruments, if any, secured thereby." (12 USC § 1707 [a].) If Real Property Law § 339-z's legislative terms were ambiguous, then principles of statutory construction would dictate reading Real Property Law § 339-z together with 12 USC § 1707 (a), relating to the same subject, unless clear legislative intent dictated otherwise. (*Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d at 121; *73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal*, 96 AD3d at 530.) Even if Real Property Law § 339-z's legislative terms and intent necessitated reading the state statute together with related federal statutes to construe the state statute, however, such a reading does not alter Real Property Law § 339-z's construction.

First of all, nothing suggests that plaintiff's blanket mortgage, given to secure loans for construction of the condominium building, does not fit the definition of a lien "given to secure advances on," rather than the unpaid purchase price of, the condominium real estate: 12 USC § 1707 (a)'s alternate definition of a first mortgage. *Societe Generale v Charles & Co. Acquisition* (157 Misc 2d at 648), focused on the term first mortgage defined as a lien "given to secure the unpaid purchase price of [real estate]," where the term is used in 12 USC § 1715y (b), to the exclusion of the alternative.

Yet the Board of Managers also points to 12 USC § 1715y (c)'s provisions regarding the insurability of condominium unit mortgages, distinguished from blanket mortgages, and contends that Real Property Law § 339-r is to ensure compliance with that federal statute. Real Property Law § 339-r requires payment or release of "every mortgage and other lien," which includes blanket mortgages, when condominium units first are conveyed. 12 USC § 1715y (c) merely authorizes the United States Secretary of Housing and Urban Development to insure mortgages for projects, including blanket mortgages, and grants the Secretary discretion to release mortgages. Thus, even taking 12 USC § 1715y into consideration in interpreting either Real Property Law § 339-r or § 339-z, the federal statute only provides for methods for insuring condominium mortgages (12 USC § 1715y [a]), and imposes requirements for insuring both unit and blanket mortgages (12 USC § 1715y [c], [d]), demonstrating that the state statutes and federal statutes do not pertain to the same subject or use the same terms. Nor do the statutes otherwise demonstrate that the state statutes were adopted to follow or conform to the federal statutes, other than as required by the Supremacy Clause. (US Const, art VI, cl 2; *see Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d at 121.) The similar goals of New York's Condominium Act and the National Housing Act are an insufficient basis to treat them in pari materia. (*73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal*, 96 AD3d at 530.)

### D. The Condominium's Bylaws Do Not Invalidate the Status of Plaintiff's Mortgage Lien as a First Mortgage

■ The Board of Managers also claims that the condominium's bylaws section 8.1 (a), entitling unit owners to give a first

mortgage, invalidates the first mortgage status of the mortgage 455 CPW gave to plaintiff, because 455 CPW was a sponsor, not a unit owner. (Affirmation of Edward Cuddy III in support of cross motion, exhibit X at 48.) This provision simply allows a unit owner to give a first mortgage, but does not preclude the sponsor from giving a first mortgage as well. The unit owners to which section 8.1 (a) refers, moreover, do not necessarily exclude the sponsor. The bylaws do not expressly define a "unit owner," but section 1.5 (a) provides that individuals, groups of individuals, and various business entities, including a limited liability company like the sponsor 455 CPW, may own units (Cuddy affirmation in support, exhibit X at 1); section 3.1 (c) contemplates a sponsor's unit ownership (Cuddy affirmation in support, exhibit X at 18); and section 3.7 (a) allows a sponsor to vote as a unit owner (Cuddy affirmation in support, exhibit X at 20).

The Condominium Act's definitions are consistent with the bylaws. The act defines a "Unit owner" as a "person or persons owning a unit in fee simple absolute" (Real Property Law § 339-e [16]), and a "Person" as a "natural person, corporation, partnership, association, trustee or other legal entity." (Real Property Law § 339-e [10]; *see Guryev v Tomchinsky*, 20 NY3d 194, 199 [2012].)

To construe the bylaws as excluding the sponsor from the definition of a unit owner actually would leave the Board of Managers completely bereft of the remedy they seek, as bylaws section 5.1 (a) (i) obligates only unit owners to pay common charges. Consequently, under the Board's construction of the bylaws, the Board would not be entitled to collect common charges from the sponsor at all and thus would not "have a lien . . . for the unpaid common charges" on the sponsor's units in the first instance. (Real Property Law § 339-z.) For all these reasons, 455 CPW is a unit owner that may give a first mortgage under the bylaws.

### E. Foreclosure of Plaintiff's Mortgage Lien Extinguishes the Board of Managers' Lien

The Board of Managers alternatively contends that, even if plaintiff holds a first mortgage, only the initial mortgage, not any mortgages consolidated with it, are entitled to priority over the lien for common charges. Consolidation of mortgages will not impair the priority rights of parties uninvolved in the consolidation. (*Federal Deposit Ins. Corp. v Five Star Mgt.*, 258

AD2d 15, 22 [1st Dept 1999]; *Benson v Deutsche Bank Natl. Trust, Inc.*, 109 AD3d 495, 498 [2d Dept 2013].) Had only the initial mortgage been recorded before the Board of Managers recorded its lien, and then plaintiff's predecessor or plaintiff, after acquiring the mortgage, consolidated other mortgages with it, the applicable rule would support the Board's contention.

■ Here, however, when the mortgages were consolidated and then recorded as a consolidated mortgage, the recording conferred priority rights on plaintiff's predecessor and assignor in that single consolidated mortgage. Since the consolidation and recording of that mortgage acquired by plaintiff predated its acquisition or other involvement, as well as the recording of the Board of Managers' lien for common charges, plaintiff's lien based on that single mortgage retains the same priority as when that mortgage was recorded. (*Plotch v US Bank N.A.*, 39 Misc 3d 1204[A], 2013 NY Slip Op 50490[U] [2013]; *Greenpoint Bank v El-Basary*, 184 Misc 2d at 891.) Therefore summary judgment of foreclosure on plaintiff's superior mortgage lien extinguishes the Board of Managers' lien for common charges, except insofar as surplus proceeds remain. (RPAPL 1353 [3]; *Bankers Trust Co. v Board of Mgrs. of Park 900 Condominium*, 81 NY2d at 1036; *Fleet Mtge. Corp. v Nieves*, 272 AD2d 435 [2d Dept 2000]; *GE Capital Mtge. Servs. v Misevcis*, 204 AD2d 963, 964 [3d Dept 1994].)

## F. The Effect of Plaintiff's Payment of Taxes

■ Finally, the Board of Managers contends that, because the payment of taxes on the mortgaged units was 455 CPW's obligation, plaintiff's payment of these taxes was voluntary and therefore, consistent with the principles laid down in *Laventall v Pomerantz* (263 NY 110, 115-116 [1933]), is not to be added to the mortgage debt that is superior to the Board of Managers' lien. While this authority holds that taxes will be paid according to any stipulation or other manifested intent of the parties, absent such consent no relief is to be awarded at the expense of the prior mortgagee. (*See Wesselman v Engel Co.*, 309 NY 27, 31 [1955]; *Vlacancich v Kenny*, 271 NY 164, 170 [1936].) Between 455 CPW as the mortgaged units' owner and its mortgagee, the owner was obligated to pay the taxes, just as the owner was obligated to pay the mortgage debt. (*Wesselman v Engel Co.*, 309 NY at 31; *Vlacancich v Kenny*, 271 NY at 170; *Laventall v Pomerantz*, 263 NY at 114; *Korea Commercial Bank of N.Y. v Ianos*, 236 AD2d 249, 250 [1st Dept 1997].) Plaintiff did not agree to become obligated to pay the taxes, either between it and the

owner or between it and the Board of Managers, just as plaintiff did not agree to carry the mortgage debt. Plaintiff only voluntarily paid the taxes to protect its and the Board's interest in the property against penalties that would be a lien with priority over both their interests. (*Laventall v Pomerantz*, 263 NY at 114; *see King v Pelkofski*, 20 NY2d 326, 333-334 [1967]; *Vlacancich v Kenny*, 271 NY at 170.)

On this basis, plaintiff would be entitled to recover the tax payments from the owner through equitable subrogation, but the mortgage also entitles plaintiff to add the payments to the mortgage debt. (Affirmation of regularity of Steven Sinatra, exhibit 1C, § 23 [b] [iv]; *see King v Pelkofski*, 20 NY2d at 333-334; *Laventall v Pomerantz*, 263 NY at 114.) The Board of Managers' lien then is subordinate to plaintiff's mortgage because it is a first mortgage of record, not because plaintiff is entitled to recover the mortgage debt from the Board through equitable subrogation.

IV. Conclusion

As set forth above, the court grants plaintiff's motion for summary judgment on the priority of its lien and consequently denies defendant Board of Managers of the 455 Central Park West Condominium's cross motion for summary judgment on this issue. The order entered November 16, 2012, appointing a referee upon the parties' stipulation, resolved the remainder of plaintiff's motion and defendant Board of Managers' cross motion. Upon a decision of the summary judgment motions on priority, plaintiff agreed to withdraw its subsequent separate motion for a declaratory judgment and for amendment of the receivership order entered November 16, 2011. This decision constitutes the court's order disposing of plaintiff's motion for summary judgment, defendant Board of Managers' cross motion for summary judgment, and plaintiff's separate motion for a declaratory judgment and for amendment of the receivership order.